IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

═══════════════════════════════════

THOMAS M. ROLAND, III,

                         Plaintiff,           Civil Action No.
         v.                       9:10-CV-0089 (GLS/DEP)

FRANK WENZ, T.A.,[1]

                         Defendant.

═══════════════════════════════════

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

THOMAS M. ROLAND, III, *Pro Se*
04-B-2754
Wende Correctional Facility
P.O. Box 1187
Alden, NY  14004

FOR DEFENDANT:

HON. ANDREW M. CUOMO        ROGER W. KINSEY, ESQ.
Attorney General of the          Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

───────────────────

    [1]    In plaintiff's complaint the defendant is identified as "Frank Wench". Defendant's moving papers, however, reflect that the correct spelling of the defendant's last name is "Wenz". The clerk will therefore respectfully be requested to adjust the official court records in this case to reflect the correct spelling of the defendant's name.

## REPORT AND RECOMMENDATION

Plaintiff Thomas M. Roland, III, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 claiming deprivation of his civil rights. In his complaint, plaintiff maintains that during the period of his confinement he was assaulted by the defendant and forced to submit to a drug injection after informing medical personnel at the facility of his desire to ingest the medication being administered orally, claiming both a denial of due process as guaranteed by the Fourteenth Amendment and exposure to cruel and unusual punishment prohibited under the Eighth Amendment.  As relief, plaintiff's complaint seeks compensatory and punitive damages.

In response to plaintiff's complaint the defendant has moved for its dismissal, alleging that plaintiff's claims are procedurally barred by virtue of his failure to exhaust available administrative remedies before commencing suit.[2]   Defendant's motion is premised principally upon information set

---

[2]    In his motion defendant also asserts that to the extent the plaintiff may be suing him for damages in his official capacity, such claims are subject to dismissal. Plaintiff's complaint, though perhaps modestly ambiguous in this regard, does not appear to suggest his intention to name Wenz as a defendant in his official capacity. Any such claim, of course, would be precluded under the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985); *see also*

2

forth in plaintiff's complaint, in which Roland states that no internal grievance procedure exists at the facility where he was housed at the relevant times and that he therefore did not pursue a grievance with regard to the matters set forth in his complaint, and invites the court to find, based upon a decision in a prior action issued in a distinctly different procedural setting, that a grievance procedure does in fact exist at the facility.

In opposition to defendant's motion, plaintiff has submitted additional materials in which he now claims that he did file a grievance complaining of the conduct forming the basis for his claims in this action. In light of plaintiff's additional submission and my reluctance to recommend dismissal of plaintiff's complaint on the scant and equivocal record now before the court, and particularly given the complexity of the exhaustion analysis in light of controlling authority in this circuit, I am recommending that defendant's motion be denied without prejudice.

I.     BACKGROUND[3]

_____

*Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).

[3]     In light of the present procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").  *See generally* Complaint (Dkt. No. 1).  While plaintiff is currently designated to the Wende Correctional Facility, located in Alden, New York, it appears that at the times relevant to his claims, though still serving a prison sentence, he was a patient at the Central New York Psychiatric Center ("CNYPC" or "Center"), a facility operated by the New York Office of Mental Health and located in Marcy, New York.  *Id.; see Decker v. Hogan*, No. 9:09-CV-0239, 2009 WL 3165830, at * 1 (N.D.N.Y. Sept. 28, 2009) (McAvoy, S.J.).[4]

On January 1, 2010, while confined at the Center, plaintiff became involved in an altercation with another patient.  Complaint (Dkt. No. 1) § 6. Following the incident plaintiff was placed in a room and asked by defendant Wenz whether he preferred to take a psychotropic drug, which was going to be administered, orally or by injection.  *Id.*  After informing Wenz that he desired to take the medication orally, he was assaulted by the defendant in the presence of other workers at the facility, suffering injuries to his back, face, head, and right shoulder.  *Id.*  During the course

---

[4]   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

4

of the incident the plaintiff was forcibly injected with the prescribed

medication.  *Id.*

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on January 26, 2010.  Dkt. No. 1.  In

his complaint, which names only Frank Wenz as a defendant, plaintiff

asserts two causes of action, one alleging deprivation of due process as

guaranteed under the Fourteenth Amendment based upon the forced

injection of medicine over his objection, and the second asserting a claim

of cruel and unusual punishment in violation of the Eighth Amendment

stemming from defendant's alleged assault.  *Id.,* § 7.  As relief, plaintiff's

complaint seeks recovery of compensatory damages of $100,000, and an

additional award of punitive damages in a like sum.  *Id.*

On March 25, 2010, defendant responded to plaintiff's complaint by

moving for its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  Dkt. No. 13.  In his motion, defendant asserts that

plaintiff's claims in the action are barred by virtue of his failure to exhaust

available administrative remedies at the CNYPC before commencing suit.

*Id.*  Plaintiff has since responded to defendant's motion through submission

of an affirmation and attached exhibit.[5]  Dkt. No. 17.

Defendant's motion, which is now fully briefed and ripe for determination,[6] has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S. Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of Civil Procedure

---

[5]    In his opposition papers plaintiff has requested that the court order the production of documents, photographs, and information regarding the incident which forms the basis for his complaint.  Dkt. No. 17.  Because issue has not yet been joined, nor has the court issued its standard Rule 16 order in the action, that request is premature.

[6]    Despite having been afforded the opportunity to submit reply papers, defendant has not done so, and the deadline for filing a reply has now passed.

6

requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Id.*

While modest in its requirement, that rule commands that a complaint

contain more than mere legal conclusions; "[w]hile legal conclusions can

provide the framework of a complaint, they must be supported by factual

allegations."  *Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient

facts which, when accepted as true, state a claim which is plausible on its

face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing

*Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second Circuit has

observed, "[w]hile *Twombly* does not require heightened fact pleading of

specifics, it does require enough facts to 'nudge [plaintiffs'] claims across

the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502

F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at

1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true and draw all inferences

in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.

Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292,

300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003);

*Burke v. Gregory*, 356 F. Supp.2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).

The burden undertaken by a party requesting dismissal of a complaint

under Rule 12(b)(6) is substantial; the question presented by such a

motion is not whether the plaintiff is likely ultimately to prevail, "'but whether

the claimant is entitled to offer evidence to support the claims.'" *Log On*

*America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp.2d 435, 441

(S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669,

673 (2d Cir. 1995)) (citations and quotations omitted).

    B.   <u>Exhaustion of Remedies</u>

    The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-

134, 110 Stat. 1321 (1996), which imposes several restrictions on the

ability of prisoners to maintain federal civil rights actions, expressly

requires that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. §

1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382

(2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6

(E.D.N.Y. Jan. 31, 2007).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002) (citation omitted).  Plaintiff's claims, which include denial of due process and excessive use of force, both qualify under the PLRA as the type of claims requiring exhaustion as a prerequisite to asserting them in the context of a federal civil rights action.[7]  *Porter*, 534 U.S. at 532, 122 S. Ct. at 992; *Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009) (quoting *Porter*, 534 U.S. at 532, 122 S. Ct. at 992).

In his motion, defendant points out that plaintiff's complaint asserts there is no grievance procedure at the Center and that he therefore did not

---

[7]   Although the plaintiff was, at all relevant times, an inmate in the primary care and custody of the DOCS, the conduct giving rise to his claims occurred at the CNYPC, a facility operated by the OMH.  Based upon that circumstance, plaintiff could potentially argue that his claims are not subject to the PLRA because they do not involve "prison life".  While the court's research has not identified a case in this circuit squarely addressing the issue, it appears that even though confined to CNYPC at the time in question, plaintiff would still qualify as a prisoner subject to the requirements of the PLRA.  *See, e.g.*, *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) ("[W]e hold that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offense are 'prisoners' within the definition of 42 U.S.C. § 1997e . . . ."); *Kalinowski v. Bond*, 358 F.3d 978 (7th Cir.) ("As used in this section, the term 'prisoner' means any person incarcerated or detained at any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, [or] probation . . ..") (quoting 28 U.S.C. § 1915(h)), *cert. denied*, 542 U.S. 907, 124 S. Ct. 2843 (2004).

pursue a grievance with regard to the claims now raised.  Complaint (Dkt. No. 1) § 4.  At this stage in the proceedings these are allegations that the court is ordinarily bound to accept as true.  *Miller*, 321 F.3d at 300.  Citing a recent decision from this district, defendant nonetheless asserts that the court should take judicial notice of the existence of a grievance procedure at the CNYPC and, based upon plaintiff's concession that he did not file a grievance in accordance with that procedure, should grant the desired dismissal.[8]

Failure to exhaust is an affirmative defense which may or may not be asserted by a defendant.  *Petty v. Goord*, No. 00 CIV 803, 2007 WL 724648, * 4 (S.D.N.Y. Mar. 5, 2007) (citing *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004)) (other citations omitted).  Accordingly, a prisoner is not obligated to plead facts plausibly suggesting that he exhausted his

_____

[8]    Judicial documents and official court records associated with those proceedings, as publically available documents, are properly considered by the court and entitled to judicial notice in connection with this lawsuit. *See* Federal Rules of Evidence 201 and 1005; *see also*, *Wilson v. Limited Brands, Inc.,* 08 CV 3431, 2009 WL 1069165 at *1 n. 1 (S.D.N.Y. April 17, 2009).  Defendant is not requesting that the court take judicial notice of any publicly filed document, but instead urges the court to take judicial notice of facts established in *Brown v. Hogan*, No. 9:07-CV-842, 2009 WL 3756595, at *4 (N.D.N.Y. Nov. 6, 2009) (Hurd, D.J. & DiBianco, M.J.) ("[P]laintiff is factually incorrect in his claim that CNYPC does not have a policy in place to address institutional complaints.").  Under the circumstances of this case, however, even if it were appropriate to take judicial notice of the fact that CNYPC had a complaint procedure in place at the time of the incident in question, and I am not convinced that it is, as will be seen that fact is no longer pivotal to this motion.

10

available administrative remedies to state a claim.  *Wheeler v. Pataki*, 2009 WL 674152 , at *10 (N.D.N.Y. Mar. 11, 2009) (McAvoy, S.J. & Lowe, M.J.) (citations omitted).  An inmate may, however, gratuitously address exhaustion in a complaint in a such a way as to destine his or her claims to certain dismissal; "[i]f a prisoner chooses to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust available administrative remedies, then his complaint may be dismissed for failure to state a claim."  *Id.*

Significantly, even if plaintiff failed to exhaust available administrative remedies before commencing suit, that failure might be excusable.  In this circuit, district courts must engage in a three-part test to determine whether an inmate's failure to exhaust should be excused.  *See Johnson v. Testimand,* 380 F.3d 691 (2d Cir. 2004); *Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004); *Giano*, 380 F.3d 680; *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *see also Macias v. Zenk*, 495 F.3d 37 (2007).[9]  Obviously at this formative stage in the proceedings, plaintiff

---

[9]    Under the prescribed protocol, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times.  *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686.  If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions preventing the exhaustion of plaintiff's remedies,

11

has not been afforded an opportunity to offer evidence which could

potentially support one or more of the recognized exceptions.  This

circumstance counsels against dismissal of plaintiff's complaint under Rule

12(b)(6).

It should be noted, moreover, that plaintiff commenced this action

utilizing a form civil rights complaint.  In response to questions regarding

whether there is a prison grievance procedure at the facility and whether

he presented facts relating to the complaint to the grievance program,

plaintiff checked "no".  *See* Complaint (Dkt. No. 1).  Plaintiff similarly

responded "no" to the question, "did you complain to prison authorities

about the facts alleged in your complaint?"  (Emphasis added).  In

opposition to defendant's motion to dismiss, however, plaintiff submitted a

document labeled "objections", which although not sworn is construed by

the court as an affirmation, stating that both he and Prisoner Legal

Services, on his behalf, wrote letters complaining of the incident to Dr.

---

they should be estopped from asserting failure to exhaust as a defense.  *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.  In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements. *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.

Donald Sawyer, who never responded.  Dkt. No. 17 at p.2 (unnumbered).

Plaintiff also attaches what appears to be one page of a copy of an

undated letter addressed to Donald Sawyer, Ph. D. notifying him of the

assault.  *Id.* at p. 4 (unnumbered).

While at first blush plaintiff's recent submission in opposition to

defendant's motion to dismiss may seem to contradict the statements

made in his complaint, viewing these allegations in a light most favorable to

him, it is possible that plaintiff understood the questions in the complaint to

be directed solely to a prison facility, as opposed to the CNYPC.  Put

another way, plaintiff may have thought that the questions applied to the

prison facility in which he was housed when he filed the complaint and not

the CNYPC.

Where a court is considering a motion to dismiss the claims of a *pro*

*se* litigant, it is bound to construe the pleadings liberally, particularly when

the plaintiff asserts a civil rights violation.  *Rodney v. Goord*, No. 00 Civ.

3724, 2003 WL 21108353, at * (S.D.N.Y. May 15, 2003) (citing *Weinstein*

*v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)) (reading a supplemental

affidavit that apparently contradicted the allegations in his complaint

regarding exhaustion to "raise the strongest argument that they suggest,

as befits a motion to dismiss opposed by a *pro se* plaintiff.").

Notwithstanding the apparent inconsistency between the statements made

in plaintiff's complaint and those in his recent submission, liberally

construing these documents and affording plaintiff the benefit of every

favorable inference, I conclude that plaintiff's claim that he exhausted

administrative remedies should be fully probed before his complaint can be

dismissed.  *See Gayle v. Benware*, No. 08 Civ. 8017, 2009 WL 2223910,

at * 5-6 (S.D.N.Y.  Jul. 27, 2009) (denying motion to dismiss based upon

exhaustion where plaintiff conceded in his complaint that he had not filed a

grievance but in response to defendant's motion alleged for the first time

that he had attempted to file a grievance, but staff prevented him from

doing so).

IV.    <u>SUMMARY AND CONCLUSION</u>

Defendant's motion, when considered solely in the context of

plaintiff's complaint and accepting as true each of the allegations contained

within it, would likely be subject to denial since plaintiff has asserted that

there is no grievance procedure in place at the CNYPC and as a result he

did not file and pursue a grievance regarding the matters giving rise to his

complaint.  Defendant, however, has asked the court to rely upon an

14

earlier judicial decision and find the existence of a grievance procedure at the Center.  Plaintiff, for his part, has submitted materials in response to defendant's motion which suggest that a grievance may in fact have been lodged.

In light of these equivocal circumstances and the available grounds which plaintiff could potentially assert for excusing a failure to exhaust, in my view the court is not well-positioned at this juncture to conclude that a failure to exhaust defense under the PLRA is "readily apparent" or "unambiguously established in the record" sufficiently to grant defendant's motion.  *Torrence v. Pesanti*, 239 F. Supp.2d 230, 231-32 (D. Conn. 2003). Instead, I find that the more prudent course of action would be to permit the issue to be fully explored through discovery and allow the defendant, if deemed appropriate, to raise the issue of exhaustion by way of a motion for summary judgment, when it can be addressed upon a more robust and fully developed record.[10]

--------

[10]   In papers received by the court plaintiff has intimated a desire to add additional defendants in the case, including Dr. Donald Sawyer, the Executive Director at the Center.  Such applications are governed by Rules 15(a) and 21 of the Federal Rules of Civil Procedure.  Since more than twenty-one days have elapsed since the filing of defendant's Rule 12(b) motion, and the joinder of parties is sought, plaintiff will be required to seek and obtain court leave in order to join additional parties.  Plaintiff is advised that when any such application is made, he must include a proposed amended complaint which is fully integrated – that is, which names all of the defendants being sued and contains all of the claims which he intends to pursue, and

Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 13) be DENIED, without prejudice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk is respectfully requested to modify the official court records in this case to reflect the correct spelling of the defendant's name as Frank Wenz; and it is further

ORDERED THAT the clerk is also serve a copy of the Report and Recommendation upon the parties in accordance with this court's local

---

is intended to supersede and take the place of the original complaint.  *See* N.D.N.Y.L.R. 7.1(a)(4).  In the event such a motion is granted the clerk will be directed to issue supplemental summonses for the new parties, and the matter can then be forwarded to the United States Marshal for service upon the newly-added defendants.

rules.

Dated:     May 24, 2010
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 2003 WL 21108353 (S.D.N.Y.)
(Cite as: 2003 WL 21108353 (S.D.N.Y.))

▷  Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
George RODNEY, Plaintiff,
v.
Glenn S. GOORD, Commissioner, William Mazzuca,
Superintendent; Ada Perez, Deputy Superintendent; ?
Lopiccolo, Correction Lieutenant; ? Ray, Correction
Sergeant; ? O'Brien, Correction Officer; ? Garnet,
Correction Officer; D. Hudson, Correction Officer; ?
Non, Correction Officer; and ? Conklin, Correction
Officer; In their Individual & Official Capacities,
Defendants.
**No. 00 Civ. 3724(WK).**

May 15, 2003.

Inmate brought a § 1983 suit against employees of the
New York State Department of Correctional Services
(DOCS), alleging that his constitutional rights were
violated by their alleged harassment, retaliation, wrongful
disciplinary charges and excessive use of force, and
seeking both monetary and injunctive relief. On defense
motions to dismiss, the District Court, Knapp, Senior
District Judge, held that the inmate failed to exhaust his
administrative remedies, as required by the Prison
Litigation Reform Act (PLRA).

Motions denied and granted accordingly.

West Headnotes

**[1] Evidence 157** ⚷ **265(8)**

157 Evidence
    157VII Admissions
        157VII(E) Proof and Effect
            157k265 Conclusiveness and Effect

157k265(8) k. Pleadings. Most Cited Cases
Pro se inmate would not be held to his statements
regarding exhaustion made in his § 1983 complaint, in
which he admitted that he did not exhaust his
administrative remedies and that, moreover, exhaustion
was not required, where those statements contradicted the
exhibits submitted with a supplemental affirmation. 42
U.S.C.A. § 1983.

**[2] Federal Civil Procedure 170A** ⚷ **664**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak664 k. Filing. Most Cited Cases
Pro se inmate's § 1983 complaint would be deemed filed
on the date of the date stamp from a Pro Se Office. 42
U.S.C.A. § 1983.

**[3] Civil Rights 78** ⚷ **1319**

78 Civil Rights
    78III Federal Remedies in General
        78k1314 Adequacy, Availability, and Exhaustion
of State or Local Remedies
            78k1319 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
    (Formerly 78k209)
Inmate failed to exhaust a § 1983 claim of harassment
against employees of the New York State Department of
Correctional Services (DOCS), and thus, the claim was
barred by the Prison Litigation Reform Act (PLRA); the
inmate did not allege that he ever appealed the outcome of
an investigation of his harassment claims. 42 U.S.C.A. §
1983; Civil Rights of Institutionalized Persons Act, § 7(a),
as amended, 42 U.S.C.A. § 1997e(a).

**[4] Civil Rights 78** ⚷ **1319**

78 Civil Rights
    78III Federal Remedies in General
        78k1314 Adequacy, Availability, and Exhaustion

Not Reported in F.Supp.2d, 2003 WL 21108353 (S.D.N.Y.)
(Cite as: 2003 WL 21108353 (S.D.N.Y.))

of State or Local Remedies
       78k1319 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
    (Formerly 78k209)
Inmate failed to exhaust claim of excessive force against employees of the New York State Department of Correctional Services (DOCS) prior to bringing a § 1983 suit against them, and thus, the claim was barred by the Prison Litigation Reform Act (PLRA). 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a).

[5] Civil Rights 78 ☞ 1319

78 Civil Rights
    78III Federal Remedies in General
       78k1314 Adequacy, Availability, and Exhaustion of State or Local Remedies
       78k1319 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
    (Formerly 78k209)
Inmate failed to exhaust claim challenging prison discipline prior to commencing his § 1983 suit against employees of the New York State Department of Correctional Services (DOCS), and thus, the claim was barred by the Prison Litigation Reform Act (PLRA); appeal of his Tier III hearing was not affirmed until 6 days after the § 1983 action was commenced. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a).

[6] Civil Rights 78 ☞ 1319

78 Civil Rights
    78III Federal Remedies in General
       78k1314 Adequacy, Availability, and Exhaustion of State or Local Remedies
       78k1319 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
    (Formerly 78k209)
Inmate failed to exhaust claim of a false misbehavior report prior to commencing his § 1983 suit against employees of the New York State Department of Correctional Services (DOCS), and thus, the claim was barred by the Prison Litigation Reform Act (PLRA); the inmate never alleged that he grieved the filing of the

allegedly false report. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a).

George Rodney, Fishkill Correctional Facility, Beacon, N.Y., Plaintiff-pro se.

Bruce Brown, Assistant Attorney General of the State of New York, New York, New York, for Defendants.

*MEMORANDUM & ORDER*

KNAPP, Senior J.

**\*1** Plaintiff George Rodney ("Plaintiff" or "Rodney"), *pro se* and incarcerated, filed this action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated by Defendants' alleged harassment, retaliation, wrongful disciplinary charges and excessive use of force. Defendants are employees of the New York State Department of Correctional Services ("DOCS"). Rodney seeks both monetary and injunctive relief, including the removal of the disciplinary conviction from his inmate record.

*BACKGROUND*

*1. Procedural History*

In August 2001, Defendants moved to dismiss Plaintiff's complaint under Fed.R.Civ.P. 12(b)(1) and (6) for his failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA") as amended, 42 U.S.C. § 1997e(a). On February 27, 2001, I denied Defendants' motion in accordance with the controlling law at that time, *Lawrence v. Goord* (2d Cir.2001) 238 F.3d 182 and *Nussle v. Willette* (2d Cir.2000) 224 F.3d 95. On February 26, 2002, the United States Supreme Court reversed *Willette,* working a significant change on the law of this circuit. *Porter v. Nussle* (2002) 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (unanimously reversing and remanding the Second Circuit's judgment and holding that "the PLRA's exhaustion requirement applies to all inmate suits about

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21108353 (S.D.N.Y.)
(Cite as: 2003 WL 21108353 (S.D.N.Y.))

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). In March 2002, Defendants requested permission to renew that motion to dismiss; I granted that request. Before the Court now is Defendants' Renewed Motion to Dismiss for failure to exhaust administrative remedies prior to commencing this action.

*2. Factual Background*

While the merits of Plaintiff's case are not at issue here, it is nonetheless useful to review the factual allegations. This action arises from incidents which allegedly occurred in January and February 2000. While Plaintiff is currently incarcerated at the Mid-Orange Correctional Facility ("Mid-Orange"), the incidents at issue in this action occurred at the Fishkill Correctional Facility ("Fishkill"). Plaintiff alleges that Defendant O'Brien ("O'Brien"), a correctional officer at Mid-Orange, had been verbally harassing him. In response, on approximately January 23, 2000, Plaintiff wrote several letters of complaint to the Vice Consul of the Consul-General of Jamaica, to Defendant Goord, ("Goord"), Commissioner of DOCS, and to Defendant Mazzuca, ("Mazzuca"), Superintendent of Mid-Orange. (Compl.¶ 14.) Plaintiff alleges that, on the day after he sent these letters, while on his way to the visiting area, O'Brien threatened him. (*Id .* ¶ 15.) Plaintiff informed his wife, Althea ("Althea"), and Defendant Ray, ("Ray"), a DOCS Sargeant, of O'Brien's actions. Ray allegedly told Plaintiff to file a complaint, but that he "could expect O'Brien to come after" him. (*Id.* ¶ 18.) In response to Plaintiff's allegations, Aletha sent a complaint to Defendant Perez ("Perez"). (Plaintiff's Supporting Affirmation (hereinafter "PSA"), Ex. 2.)

*2* On January 30, 2000, Defendants Conklin ("Conklin"), Garnett ("Garnett") and Non ("Non") (collectively "Visiting Room Defendants") ordered Plaintiff to submit to a strip search prior to entering the visiting area to see Aletha. (Compl.¶ 19.) Plaintiff alleges that during this strip search, the Visiting Room Defendants threatened him because of his complaints about O'Brien. (*Id.*) Once in the visiting area, Plaintiff complained to Ray and requested that he be placed in protective custody. (*Id.*) Ray took Plaintiff to the back area and spoke with him, informed him that he would speak with the Lieutenant, and returned Plaintiff to the visiting area. (*Id.*) At that point, Aletha

asked Ray to call a Lieutenant. (*Id.*) At the conclusion of the visit, as Plaintiff was exiting the visiting room, he noticed Defendants Conklin, Garnett, Non and Correction Officer Murray ("Murray") near the visiting room exit. (*Id.* ¶ 20.) Plaintiff then returned to the visiting room and told Aletha that the aforementioned Defendants were "going to set him up." (*Id.*) Ray then directed Plaintiff to leave the visiting room and finally removed him from the visiting room. (*Id.* ¶ 21.) At the same time, Aletha used a pay phone to first call the state police, and then call the Mid-Orange facility itself, in the hopes of speaking with a lieutenant. (*Id.* ¶ 20.) Plaintiff alleges that after he was removed from the visiting room, Defendants Ray and Non assaulted him. (*Id.* ¶ 21.) He claims that when he awoke, he was in the Special Housing Unit and that O'Brien was there, "laughing and joking telling plaintiff, 'I told you I would get you.' " (*Id.*) Later that day, Plaintiff became ill and was taken to St. Luke's Hospital where he was hospitalized from January 30 to February 3, 2000. As a result of the visiting room incident, Defendants Marshall ("Marshall"), Hudson ("Hudson"), and Sargent ("Sargent") (collectively the "IMR Defendants") wrote an Inmate Misbehavior Report (the "IMR"), charging plaintiff with disturbing the order of the facility and refusing to obey a direct order. (*Id.* ¶ 25.)

On February 8, 2000, a "Tier III" Superintendent's hearing was held on the IMR.[FN1] (*Id.* ¶ 26.) Defendant Perez, a Deputy Superintendent, presided over the disciplinary hearing. (*Id.*) After hearing from witnesses, Perez found Plaintiff guilty of the charges in the IMR and imposed a penalty of 45 days confinement in Fishkill's Special Housing Unit ("SHU"), and ninety days loss of privileges. (*Id.* at ¶ 28.)

> FN1. Tier III hearings are held for "the most serious violations of institutional rules." *Walker v. Bates* (2d Cir.1994) 23 F.3d 652, 654; 7 N.Y.C.R.R. § 270.3.

*DISCUSSION*

*1. Legal Standard*

Defendants move this Court to dismiss Plaintiff's action

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21108353 (S.D.N.Y.)
(Cite as: 2003 WL 21108353 (S.D.N.Y.))

pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. We recently addressed the propriety of a motion to dismiss an inmate's action for lack of subject matter jurisdiction where he failed to exhaust his administrative remedies. *See Arnold v. Goetz (S.D.N.Y.2003) 245 F.Supp.2d 527, 531-34.* For the reasons set forth in that opinion, we deny Defendants' motion to dismiss to the extent that it is brought pursuant to Rule 12(b)(1). *See id.* at 534 ("[s]ince the PLRA's exhaustion requirement is an affirmative defense and not a jurisdictional prerequisite, dismissing an inmate's action for lack of subject matter jurisdiction where he failed to exhaust his administrative remedies would be inappropriate.")

**\*3** In addition to their Rule 12(b)(1) challenge, the Defendants also contend that the Plaintiff's action must be dismissed pursuant to Rule 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). Under that rule, the Court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Educ.* (2d Cir.1997) 131 F.3d 326, 329. Dismissal of a complaint pursuant to Rule 12(b)(6) is proper " 'only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief." ' *Scoto v. Almenas* (2d Cir.1998) 143 F.3d 105, 109-110 (quoting *Branham v. Meachum* (2d Cir.1996) 77 F.3d 626, 628 (citation omitted)). Furthermore, where, as here, we are considering a motion to dismiss the claims of a litigant proceeding *pro se,* we must construe that litigant's pleadings liberally, especially when we are dealing with a complaint alleging civil rights violations. *Weinstein v. Albright* (2d Cir.2001) 261 F.3d 127, 132. *See also Flaherty v. Lang* (2d Cir.1999) 199 F.3d 607, 612.

Defendants argue that Plaintiff's action must be dismissed because he failed to exhaust his administrative remedies prior to commencing this action. Since the PLRA's exhaustion requirement is an affirmative defense, Defendants "bear [ ] the burden of proving plaintiff's failure to comply with the exhaustion requirement." *Reyes v. Punzal* (W.D.N.Y.2002) 206 F.Supp.2d 431, 433.

*2. Exhaustion Requirement*

"Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." *Porter,* 534 U.S. at 523. However, "Congress, in enacting the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, Title VIII, 110 Stat. 1321-66 (1996), carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing suit under 42 U. S.C. § 1983." *Neal v. Goord* (2d Cir.2001) 267 F.3d 116, 119.

The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U .S. at 532. Inmates must therefore exhaust all administrative remedies, at all levels of appeal, in order for their claims to survive a motion to dismiss. *See Hemphill v. New York* (S.D.N.Y.2002) 198 F.Supp.2d 546, 548.

Prior to *Porter,* the Second Circuit had concluded "that exhaustion of administrative remedies [was] not required for claims of assault or excessive force brought under § 1983." *Willette,* 224 F.3d at 106, *rev'd,* (2002) *Porter,* 534 U.S. at 532. Although Rodney brought this action before the Supreme Court announced its decision in *Porter,* " 'the broad exhaustion requirement announced in [*Porter* ] applies with full force' to a litigant ... who brought suit prior to the dates of its decision." *Mack v. Artuz* (S.D.N.Y. Dec. 19, 2002) 01 Civ. 11832(JSR) (GWG), 2002 WL 31845087, at \*3 n. 2 (quoting *Espinal v. Goord* (S.D.N.Y.17, 2002) 01 Civ. 6569 (NRB), 2002 WL 1585549, at \*2 n. 3). *See generally Harper v. Virginia Dep't of Taxation* (1993) 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 ("When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law must be given full retroactive effect in all cases still open on direct review as to all events, regardless of whether such events predate or postdate announcement of the rule.")

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21108353 (S.D.N.Y.)
(Cite as: 2003 WL 21108353 (S.D.N.Y.))

**\*4** Plaintiff's § 1983 action, predicated on allegations of harassment, excessive force, and the filing of a false misbehavior report and subsequent disciplinary action, is subject to § 1997e(a). As such, Plaintiff is subject to the exhaustion requirement imposed by the PLRA and cannot proceed with this lawsuit unless he exhausted available administrative remedies prior to filing his complaint. *Burns v. Moore* (S.D.N.Y. Jan. 24, 2002) No. 99 Civ. 0966(LMM) (THK), 2002 WL 31663510, at \*3 ("Where an inmate fails to satisfy the PLRA's exhaustion requirement[ ] prior to filing his complaint, the court must dismiss the complaint and require the plaintiff to exhaust his remedies before refiling.")

*3. Administrative Remedies*

New York provides an elaborate administrative grievance process for prisoners in New York State correctional facilities. *See Cruz v. Jordan* (S.D.N.Y.1999) 80 F.Supp.2d 109, 117. *See also* N.Y. Correct. Law § 139; 7 N.Y. Comp.Codes R. & Regis. tit.7, § 701.1 *et seq.* This process, known as the Inmate Grievance Program ("IGP"), sets forth both a formal procedure for all grievances as well as a less elaborate procedure for complaints about "harassment." *See* 7 N.Y.C.R.R. §§ 701.7, 701.11. In brief, the formal procedure consists of three steps;[FN2] in order for a prisoner to exhaust administrative remedies where the formal procedure is at issue, he must proceed through all three levels of the procedure-that is, he must secure CORC review of his grievance in order to fully exhaust administrative remedies. *See Hemphill,* 198 F.Supp.2d at 549.

> FN2. The review process begins when a complaint is submitted to the inmate grievance resolution committee ("IGRC"). The three step review process begins when (1) the grievance is investigated and reviewed by the IGRC, which is comprised of inmates and DOCS' employees; (2) if appealed, the Superintendent of the facility reviews the IGRC's determination; and (3) if the superintendent's decision is appealed, the Central Office Review Committee (CORC) makes the final administrative determination. *See* 7 N.Y.C.R.R. § 701.7.

In a harassment case, such as where an inmate alleges the use of excessive force by a DOCS employee, the administrative review is streamlined by eliminating the first step of the administrative procedure. 7 N.Y.C.R.R. §§ 701.11(b)(1) & (b)(3). *See also Perez v. Blot* (S.D.N.Y.2002) 195 F.Supp.2d 539, 542-543; *Morris v. Eversley* (S.D.N.Y.2002) 205 F.Supp.2d 234, 240. A grievance is filed with both the Inmate Committee and the harassing employee's supervisor. If the grievance raises a bona fide harassment issue, review at the first level is bypassed and the matter is sent directly to the Superintendent for review. *Hemphill v. New York* (S.D.N.Y.2002) 198 F.Supp.2d 546, 549.

Inmates may also comply with the IGP by resolving their grievances through informal channels. *See Marvin v. Goord* (2d Cir.2001) 255 F.3d 40, 43 n. 3 (citing 7 N.Y. Comp.Codes R. & Regs.tit.7 § 701.1)("Resolution of the matter through informal channels satisfies the exhaustion requirement, as, under the administrative scheme applicable to New York prisoners, grieving through informal channels is an available remedy.") *See also Heath v. Saddlemire* (N.D.N.Y. Oct. 7, 2002) No. 96-CV-1998 (FJS/RF), 2002 WL 31242204, at \*3; *Perez,* 195 F.Supp.2d at 545-546.

Finally, an inmate subject to discipline after a Superintendent's Hearing has the right to appeal the disposition to the commissioner. 7 N.Y.C.R.R. §§ 254.8. The commissioner or his designee may then affirm, reverse, remand or modify the determination made at the hearing. 7 N.Y.C.R.R. §§ 254.8(a)-(d). Furthermore, at any time the inmate is subject to the penalty imposed, the superintendent may review the determination and reduce the penalty. 7 N.Y.C.R.R. § 254.9. However, the filing of an allegedly false misbehavior report is a grievable matter.. *Cherry v. Selsky* (S.D.N.Y. July 7, 2000) No. 99Civ4636 (HB), 2000 WL 943436, at \*7. *See also* N.Y.C.C.R.R. § 701.2(e) (prisoners are permitted to file grievances regarding "[a]llegations of employee misconduct meant to annoy, intimidate or harm an employee.") Thus, an inmate alleging that a misbehavior report is false must exhaust his claim administratively through the IGP procedure prior to filing a complaint alleging the same.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21108353 (S.D.N.Y.)
(Cite as: 2003 WL 21108353 (S.D.N.Y.))

*4. Plaintiff's Attempts at Exhaustion*

**\*5** [1] As a preliminary matter, Defendants rightly point out that Plaintiff admits, in the first paragraph of his complaint, that he did not exhaust his administrative remedies and that, moreover, exhaustion was not required. (Defs.' Mem. of L. in Supp. of Renewed Mot. to Dismiss at 5) (hereinafter "Defs.' Mem. in Supp.") However, Plaintiff has since submitted a "Supporting Affirmation" which details-and provides exhibits supporting-his efforts to navigate the administrative remedies available to him. Where, as here, we are considering a motion to dismiss the claims of a litigant proceeding *pro se,* we construe that litigant's pleadings liberally, especially when we are dealing with a complaint alleging civil rights violations. *Weinstein,* 261 F.3d at 132. In order fully to evaluate whether or not Plaintiff did indeed exhaust his remedies, we will read the Supplemental Affirmation together with the complaint to raise the strongest argument they suggest, as befits a motion to dismiss opposed by a *pro se* plaintiff. We decline Defendants' invitation to hold Plaintiff to his statements regarding exhaustion made in the complaint where those statements contradict the exhibits submitted with the Supplemental Affirmation.

[2] A second preliminary matter concerns the date this action was commenced. Plaintiff argues that the action was commenced May 17, 2000, the date that the docket indicates the complaint was filed. Plaintiff's argument must fail. In federal court, actions are commenced by filing a complaint with the court. FED.R.CIV.P. 3. In *pro se* inmate cases, complaints are deemed filed when the prisoner relinquishes control to the prison officials. *Houston v. Lack* (1988) 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245; *Dory v. Ryan* (2d Cir.1993) 999 F.2d 679. Because it is often difficult to determine the date a prisoner relinquished control of a particular document, the date stamp from the *Pro Se* Office acts as the date a complaint is "deemed" filed. *Toliver v. County of Sullivan* (2d Cir.1988) 841 F.2d 41. Plaintiff's complaint in this case bears a stamp from the *Pro Se* Office with the date April 7, 2000. Therefore, this action was commenced on April 7, 2000. We now turn our attention to the question of exhaustion.

a. Exhaustion of claims of harassment and excessive force

[3] Plaintiff's own submissions make clear that he did not administratively exhaust his claims prior to the commencement of this action on April 7, 2000. (*See, e.g.,* PSA Exs. 12, 14.)

Plaintiff grieved O'Brien's harassment on January 23, 2000 via letter to Defendant Mazzuca. (PSA Ex. 1.) This letter was apparently accepted as a complaint; a letter dated February 22, 2000 from Deputy Commissioner Leclaire ("Leclaire") states that Plaintiff's "concerns were investigated and [he] was replied to on February 3, 2000 by Lieutenant Cave. No evidence was found to support [his] allegation." (PSA Ex. 7.) A letter dated March 29, 2000 from Assistant Commissioner Wilhelm explains that his own letter, as well as Leclaire's letter of February 22, were in response "to a complaint filed by [Plaintiff] on January 23, 2000." (*Id.*) No evidence has been submitted, nor does Plaintiff allege, that he ever appealed the outcome of the investigation of his harassment claims against O'Brien. Accordingly, we must find that Plaintiff failed to exhaust the administrative remedies available to him prior to commencing this case. Defendants' motion to dismiss for failure to exhaust administrative remedies is therefore granted insofar as that motion deals with Plaintiff's harassment claims against O'Brien.

**\*6** [4] It is unclear from the parties' submissions when Plaintiff submitted a formal complaint relating to the Visiting Room Defendants. Nonetheless, working backwards from Plaintiff's submissions, it is clear that available administrative remedies were not exhausted until August 16, 2000, when Plaintiff's appeal to CORC was denied. (PSA Ex. 14.) Accordingly, we must find that Plaintiff failed to exhaust the administrative remedies available to him prior to commencing this action. Defendants' motion to dismiss for failure to exhaust administrative remedies is therefore granted insofar as that motion deals with Plaintiff's harassment claims against O'Brien.

b. Exhaustion of claims of false misbehavior report and discipline

[5] Following his February 8, 2000 "Tier III" hearing on the IMR, Plaintiff sent a letter appealing the hearing's outcome to Defendant Goord. (Pl.'s Supplemental

Not Reported in F.Supp.2d, 2003 WL 21108353 (S.D.N.Y.)
(Cite as: 2003 WL 21108353 (S.D.N.Y.))

Affirmation Ex. 11)(hereinafter "PSA"). This letter is dated February 24, 2000 and was sent in accordance with 7 N.Y.C.R.R. §§ 254.8 which grants an inmate subject to discipline after a Superintendent's Hearing the right to appeal the disposition to the commissioner. The appeal was affirmed, following review of the hearing, on April 13, 2000. (*Id.*) Plaintiff followed the commissioner's affirmation with a letter request for reconsideration of the appeal on May 30, 2000. (*Id.*) This letter was directed to Donald Selsky ("Selsky"), the Director of Special Housing/Inmate Disciplinary Program. (*Id.*) Because Plaintiff's appeal of his Tier III hearing was not affirmed until April 13, 6 days after this action was commenced, it is clear that he did not exhaust the available administrative remedy for challenging the supervisory hearing prior to commencing this action as required by the PLRA. Accordingly, Defendants' motion to dismiss Plaintiff's claim for failure to exhaust administrative remedies is granted as it relates to Plaintiff's claims regarding the February 8 Supervisory Hearing and the commissioner's subsequent review.

[6] To the extent that Plaintiff seeks relief in this Court from a falsely filed IMR, we must also grant Defendants' motion to dismiss for failure to exhaust administrative remedies. Plaintiff never alleges that he grieved, through the IRC, the filing of the allegedly false IMR. Since the filing of an allegedly false misbehavior report is a grievable matter, Plaintiff's failure to so grieve leaves us with no alternative but to dismiss the action to the extent that it states a claim for relief on this ground. *See Cherry v. Selsky* (S.D.N.Y. July 7, 2000) No. 99Civ4636 (HB), 2000 WL 943436, at *7. *See also* N.Y.C.C.R.R. § 701.2(e) (prisoners are permitted to file grievances regarding "[a]llegations of employee misconduct meant to annoy, intimidate or harm a employee.")

*CONCLUSION*

Defendants' motion to dismiss pursuant to Rule 12(b)(1) is DENIED.

Defendants' motion to dismiss pursuant to Rule 12(b)(6) is GRANTED. The Clerk of the Court is directed to close the file.

**7** SO ORDERED.

S.D.N.Y.,2003.
Rodney v. Goord
Not Reported in F.Supp.2d, 2003 WL 21108353 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Wayne HARGROVE, Plaintiff,
v.
Sheriff Edward RILEY; Nassau County Correctional
Facility, et al; Nassau County University Medical Staff
and Nassau County Correctional Facility, Defendants.
**Civil Action No. CV-04-4587 (DGT).**

Jan. 31, 2007.

Wayne Hargrove, Ossining, NY, pro se.

Alexander V. Sansone, Troy & Troy, Lake Ronkonkoma,
NY, Joseph Carney, Mineola, NY, for Defendants.

*MEMORANDUM AND ORDER*

TRAGER, J.

*1 Inmate Wayne Hargrove ("Hargrove" or "plaintiff")
brings this *pro se* action pursuant to 42 U.S.C. § 1983
against the Nassau County Sheriff, Nassau County
Correctional Facility ("NCCF") and NCCF's medical staff,
(collectively, "defendants"), seeking damages for injuries
allegedly caused by defendants while he was incarcerated
at NCCF. Defendants now move for summary judgment
pursuant to Fed.R.Civ.P. 56 arguing, *inter alia,* that
Hargrove's claims should be dismissed because he failed
to exhaust administrative remedies, as required by the
Prison Litigation Reform Act of 1995 ("PLRA"), 42
U.S.C. § 1997e. For the following reasons, defendants'
motions for summary judgment are granted.

**Background**

On August 27, 2004,[FN1] Hargrove filed a complaint,
alleging that defendants violated his civil rights when they
forcibly administered purified protein derivative skin tests
("PPD test") to test for latent tuberculosis ("TB") in April
2002, 2003 and 2004 while he was incarcerated at NCCF.
Complaint, Ex. C; Aff. in Opp. at 1-4, Ex. A. Hargrove
named Nassau County Sheriff Edward Reilly ("Reilly"),
NCCF and Nassau County University Medical Staff[FN2] as
defendants.[FN3] On November 22, 2004, after discovery,
County Defendants and NHCC Defendants filed separate
motions for summary judgment pursuant to Fed.R.Civ.P.
56. Both defendants properly filed a Local Rule 56.1
Statement and served Hargrove a Notice to *Pro Se* Litigant
Opposing Motion for Summary Judgment, pursuant to
Local Civil Rule 56.2.

FN1. Hargrove signed the complaint August 27,
2004. The *pro se* clerk's office received and filed
the complaint on September 20, 2004. Under the
prison mail-box rule, a *pro se* prisoner's
complaint is deemed filed when it is delivered to
prison authorities. *See, e.g., Walker v.
Jastremski,* 430 F.3d 560, 562 (2d
Cir.2005)(deeming *pro* se prisoner's § 1983
action filed on date complaint was handed to
prison officials). There is no evidence in the
record as to when Hargrove handed the
complaint to prison officials. However, it is clear
the operative date is between August 27, 2004
and September 20, 2004. As discussed, *infra,*
both of these dates occur before Hargrove
properly exhausted the administrative remedies
available to him at NCCF.

FN2. The Nassau County University Medical
Staff are employed by the Nassau Health Care
Corporation ("NHCC"). Pursuant to the
Correctional Center Health Services Agreement
between the County of Nassau and NHCC, dated
September 24, 1999, NHCC provides medical
services for inmates at NCCF. County Defs.'s
Not. of Motion, Decl., at 1.

FN3. Reilly and NCCF are represented
separately from NHCC. Accordingly, when a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

distinction is necessary, Reilly and NCCF will be referred to as "County Defendants" and Nassau County University Medical Staff and NHCC will be referred to as "NHCC Defendants."

**(1)**

**Tuberculosis Testing at NCCF**

Upon entering NCCF, new prisoners must first go through medical intake. Aff. of Kim Edwards, ("Edwards Aff.") ¶ 3. This standard process usually takes seventy-two hours. Edwards Aff. ¶ 4. During medical intake, NCCF tests inmates for TB. Aff. of Getachew Feleke ("Feleke Aff.") ¶ 3. NCCF generally uses a PPD test to detect latent TB. Feleke Aff. ¶ 3. However, if an inmate has previously tested positive for TB, it is NCCF's policy to test for TB using an x-ray instead.[FN4] Feleke Aff. ¶ 3. As part of its Infectious Disease Program, NCCF re-tests inmates for TB each year, beginning after they have been housed in that facility for one year. Edwards Aff. ¶ 5.

FN4. According to WebMD, "[a] tuberculin skin test should not be done for people who have a(1) Known TB infection [or a] (2) Positive tuberculin skin test in the past. A second test may cause a more severe reaction to the TB antigens." Jan Nissl, RN, BS, *Tuberculin Skin Tests*, W E B M D , h t t p : / / www.webmd.com/hw/lab_tests/hw203560.asp (last visited Jan. 31, 2007).

**(2)**

**Hargrove's Tuberculosis Testing at NCCF**

On March 15, 2002, Hargrove was incarcerated at NCCF. NHCC Defs.' 56.1 Statement ¶ 1. Before entering the general population, Hargrove was processed through medical intake. NHCC Defs.' 56.1 Statement ¶ 2. The NCCF Medical Intake Chart for Hargrove, dated March 15, 2002 ("3/15/02 Chart"), shows that Hargrove informed medical staff that he had previously been exposed to

tuberculosis. NHCC Defs.' Notice of Mot., Ex. C, at 1; NHCC Defs.' 56.1 Statement ¶ 2. The 3/15/02 Chart also shows that Hargrove reported testing positive to a prior PPD test and that he had been treated for TB in 2000. NHCC Defs.' Notice of Mot., Ex. C, at 1. Hargrove alleges that he was exposed to and treated for TB in 1997. Hargrove's Aff. in Opp. to Mot. for Summary Judgment, ("Aff. in Opp."), Ex. A at 1-2. Defendants contend that Hargrove was given an x-ray during the medical intake process because of his reported positive PPD test, and that the x-ray was negative, showing no active TB infection. NHCC Defs.' 56.1 Statement ¶ 2; Edwards Aff. ¶ 3. Without specifying a date, Hargrove generally states that his "request to be x-rayed was denied." Aff. in Opp. at 3.

**\*2** Pursuant to NCCF's Infectious Disease Program, after being incarcerated in NCCF for a year, Hargrove was scheduled to be re-tested for TB. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. On May 24, 2003, Hargrove was given a PPD skin test. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. This test was negative. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. According to Hargrove, he requested an x-ray instead of a PPD test because of his previous exposure to TB, but was forced to submit to the PPD test. He also alleges that defendants threatened to put him in "keep lock" or "lock up" unless he submitted to the PPD test.[FN5] Complaint, Ex. C; Aff. in Opp. at 1-4, Ex. A.

FN5. Hargrove has made contradictory statements about being placed in "keep lock" or "lock up." It is unclear whether he is alleging that defendants threatened to place him in "lock up" unless he submitted to the PPD test or whether he was actually placed in "lock up" until such time that he agreed to submit to the PPD tests. For example, in his complaint, Hargrove states that when he "refused to submit to another [PPD] test, the Correctional Authorities were brought in and placed [him] in lock up." Complaint ¶ 4. In a hearing before Magistrate Judge Bloom on January 31, 2005, Hargrove stated that he took the PPD tests because he was told that he would be placed in "lock up" until he submitted to the test. Hr'g Tr. 6:1-18; 9:5-10:10. In Exhibit B to his complaint, Hargrove alleges both that he was given an unwarranted TB shot and that when he refused the same shot he was placed in "keep

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

lock." Complaint, Ex. B. There is no evidence in the record that Hargrove was ever segregated from the general population while housed at NCCF, outside of the seventy-two hour initial medical intake period. Aff. of Sgt. Neumann ("Neumann Aff.") at 1-2 (referring to prison records showing Hargrove's holding locations which demonstrate that he was never placed in "lock up"); NCCF 56.1 Statement ¶ E. Whether or not Hargrove was actually placed in "lock up" is not a material fact for purposes of this motion; as explained in detail, *infra,* Hargrove's failure to exhaust administrative remedies under the PLRA precludes a consideration of the merits of his Section 1983 claim.

The following year, in June of 2004, Hargrove was scheduled to be retested. Edwards Aff. ¶ 6; NHCC Defs.' 56.1 Statement ¶ 5. Because of the contradiction between the negative May 2003 PPD test and his reported positive history, NCCF contacted the Infectious Disease Department of the Nassau County Medical Center. Edwards Aff. ¶ 6. It was suggested that Hargrove be given a two-step PPD test, administered fifteen days apart. Feleke Aff. ¶ 4; Edwards Aff. ¶ 6. Hargrove was given these two PPD skin tests in June 2004. Edwards Aff. ¶ 6; NHCC Defs.' 56.1 Statement ¶ 5. Again, Hargrove alleges that these tests were administered against his will and under threat of being placed in quarantine. Complaint, Exs. A, B; Aff. in Opp., Ex. A.

On December 3, 2004, Hargrove was seen by a physician's assistant. NHCC Defs.' 56.1 Statement ¶ 6. During this meeting, Hargrove complained of a dry cough and that the site on his forearm where the June 2004 PPD tests had been administered was red and swollen. NHCC Defs.' 56.1 Statement ¶ 6; 11/28/04 Sick Call Request.

Hargrove's December 18, 2004 chart notes a positive PPD test and an order was placed in the chart that Hargrove not be submitted for future PPD tests. Edwards Aff. ¶ 7; NHCC Defs.' 56.1 Statement ¶ 8. *See also* 11/19/2004 Grievance.

Hargrove alleges that the following physical ailments were caused by the PPD tests: chronic coughing, high blood

pressure, chronic back pain, lung infection, dizzy spells, blurred vision and a permanent scar on both his forearms. Complaint, Ex. C; Aff. in Opp. at 3-4.

(3)

**NCCF's Inmate Grievance Procedure**

NCCF has had an inmate grievance program ("IGP") in place since 2001. Aff. of Kenneth Williams, ("Williams Aff."), at 2. NCCF's IGP is carried out in conformance with the New York State Commission of Corrections Minimum Standards and Regulations for Management of County Jails and Penitentiaries ("Minimum Standards"). *Id.*

The IGP is designed to resolve complaints and grievances that an inmate may have regarding the inmate's care and treatment while incarcerated at NCCF. Williams Aff. at 2. Upon entering NCCF, all inmates receive a copy of the NCCF inmate handbook, which outlines the IGP. *Id.*

**\*3** The record does not include an actual copy of NCCF's IGP, but the NCCF's IGP is detailed in the affidavit of NCCF Investigator Kenneth Williams. [FN6] The IGP encourages inmates to resolve their grievances informally with the staff member assigned to the inmate housing unit first. *Id.* If an acceptable resolution cannot be reached, inmates must then proceed through the formal three-step process set out in the IGP. *Id.* at 3.

> FN6. Hargrove does dispute any statements made by Investigator Williams regarding the inmate grievance procedure, time limits or its availability to him. Furthermore, Hargrove does not dispute that he received a handbook outlining the IGP.

The first step requires an inmate to submit his grievance form [FN7] to the Inmate Grievance Unit by placing it in a locked box located in each housing area, "within five days of the date of the act or occurrence giving rise to the grievance." [FN8] *Id.* at 2-3. NCCF indexes all grievance

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

forms filed by inmates in a log book and in a computer system. *Id.* at 1, 3. Once a grievance form is received by the Inmate Grievance Unit, the grievance is investigated and the inmate will receive a written determination of the outcome from the Inmate Grievance Coordinator in Section II of the grievance form. [FN9] *Id.* at 3. The inmate is then given a choice to accept or appeal the decision by checking the desired selection and signing his name in Section III of the grievance form. *See, e.g.,* 11/19/2004 Grievance form. If the inmate is not satisfied with the decision of the Inmate Grievance Coordinator, the inmate may appeal the determination to the Chief Administrative Officer. Williams Aff. at 3. Finally, if the inmate is not satisfied with the Chief Administrative Officer's determination, the inmate may appeal to the New York State Commission of Correction Citizen's Policy and Complaint Review Council ("Council"). *Id.* at 3. The Council will then render a final determination. *Id.* at 3.

> FN7. The grievance forms contain four sections to be utilized throughout all three steps of the IGP. Section I provides space for the inmate to explain his complaint and the actions he requests as relief. Section II is for the decision of the Inmate Grievance Coordinator. Section III is titled "Acceptance/Appeal of Grievance Coordinator's decision" and contains two mutually exclusive options in which the inmate must choose one or the other: "I have read and accept the Grievance Coordinator's decision," or "I have read and appeal the Grievance Coordinator's decision." Section IV provides space for the decision of the Chief Administrative Officer.

> FN8. Hargrove has not argued that he was unaware of this five-day deadline.

> FN9. There is no evidence in the record specifying the how long an inmate has to appeal inaction by the Inmate Grievance Unit.

**(4)**

**Authenticity of the Grievance Forms and Other**

**Documents Submitted by Hargrove**

In support of his allegations that he continuously informed defendants that he had been exposed to TB and, therefore, should not have been given PPD tests, Hargrove submitted three letters with his complaint, two of which were addressed to the Inmate Grievance Committee and one of which was addressed to "To whom this may concern." Complaint, Exs. A-C. He also submitted five complaint letters written to Sheriff Reilly, seventeen sick call requests and nine grievance forms during discovery and with his Affidavit in Opposition to Defendants' Motion for Summary Judgment, explaining that some of the medical records and notarized letters were "missing." Aff. in Opp, Ex. A at 2. Defendants call the authenticity of most of these documents into question, contending that Hargrove never submitted any grievance form or complaint letter before he filed his complaint. County Defs.' Mem. of Law at 16-21; County Defs.' 56.1 Statement at ¶ ¶ B2, C3, D3.

Kenneth Williams, an investigator at NCCF in the Inmate Grievance Unit, testified that he reviewed all of the grievance forms, complaint letters and sick call requests annexed to Hargrove's Complaint and to Hargrove's Affidavit in Opposition to Defendants' Motion for Summary Judgment. Williams Aff. at 2. Williams testified that he examined the grievance records at NCCF and searched "for any grievances by plaintiff/inmate Hargrove" and found "only two." [FN10] Williams Aff. at 1. The first grievance, dated November 19, 2004, complained that the medical staff continued "forcing [Hargrove] to take a T.B. shot while [he] keep[s] telling them that [he] has been exposed to T.B." 11/19/2004 Grievance; Williams Aff. at 1. In response to this grievance, Hargrove's "positive" TB status was noted in his medical records and an order was placed in Hargrove's medical chart, stating that Hargrove not be subjected to future PPD tests. 11/19/2004 Grievance, Section II; Williams Aff. at 1; NHCC Defs.' 56.1 Statement ¶ 8; Edwards Aff. ¶ 7. In Section III of the 11/19/2004 Grievance, Hargrove acknowledged that he had read the Grievance Coordinator's decision, and that he chose to accept the decision instead of appealing it. 11/19/2004 Grievance. The other grievance received by the Grievance Unit, dated May 11, 2005, complained of an unrelated matter. 5/11/2005 Grievance (complaining of back problems and requesting the return of his medical shoes); Williams Aff. at 1. Thus, Williams concluded that, beside

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

the 11/19/2004 and 5/11/2005 Grievance Forms, none of the other documents were "received by the grievance unit, and, given the locked box system, the grievance-forms were never submitted by plaintiff/inmate." Williams Aff. at 2.

FN10. It is NCCF's procedure to forward to the attention of the Grievance Unit all official grievance forms and complaint letters-even ones not specifically addressed to the Grievance Unit. Williams Aff. at 3.

**\*4** A visual examination of the grievance forms Hargrove submitted in support of his claims suggests forgery. Five of the nine grievance forms were requests to stop PPD testing. *See* April 19, 2002 grievance; April 28, 2002 grievance; April 20, 2003 grievance; April 28, 2003 grievance; November 19, 2004 grievance. The remaining grievance forms concerned Hargrove's requests for medical shoes. *See* March 18, 2002 grievance; July 6, 2002 grievance; February 20, 2003 grievance; May 11, 2005 grievance. Of the grievance forms complaining of unwanted PPD tests, the April 28, 2002 grievance form is a patent photocopy of the April 19, 2002 grievance form, and the April 28, 2003 grievance form is a patent photocopy copy of the April 20, 2003 grievance form, with only the handwritten dates changed. The only potentially authentic grievance forms relating to Hargrove's complaint about the PPD testing are dated April 19, 2002, April 20, 2003, and November 19, 2004. Of these grievance forms, only the November 19, 2004 has been authenticated by NCCF personnel. *See generally* Williams Aff. at 1-4.

Turning to the complaint letters addressed to Reilly, many contain notary stamps cut from the bottom of unrelated documents and photocopied onto the bottom of the complaint letters. *See* County Defs.' Mem. of Law at 18-21. C.O. Thomas McDevitt and C.O. Paul Klein, both of whom perform notary services for prisoners at NCCF, have submitted sworn affidavits, stating that they kept individual Notary Log Books covering all dates relevant to this litigation. Aff. of C.O. Klein, ("Klein Aff."), at 1; Aff. of C.O. McDevitt, ("McDevitt Aff."), at 1. McDevitt's Notary Log Book shows that he notarized only one document for Hargrove. This document, dated May 13, 2002, was a motion related to Hargrove's criminal trial.

McDevitt Aff. at 1-2. Hargrove signed the Notary Log Book acknowledging receipt of that notarized motion. McDevitt Aff. at 2. McDevitt states that he never notarized any other documents for Hargrove. McDevitt Aff. at 2. However, McDevitt's stamp and signature dated May 13, 2002 (the date of the legitimate notarization) appear on Hargrove's letter to Sheriff Reilly dated May 10, 2002. County Defs.' Not. of Motion, Ex. A.

These facts repeat themselves in regard to the documents bearing the notary stamp and signature of Klein. Klein had performed several legitimate notarizations for Hargrove in connection to Hargrove's criminal trial. Klein Aff. at 1-2. Hargrove signed Klein's Notary Log Book acknowledging receipt of those notarized documents. Klein Aff. at 2. However, Klein states that he never notarized any of Hargrove's letters addressed to Sheriff Reilly that bear Klein's stamp and signature. Klein Aff. at 2. On all of the documents that Hargrove submitted bearing Klein's stamp and signature, the dates and signatures of Klein match identically to the dates on which he had performed legitimate notarizations for Hargrove in connection with his criminal trial. Defendants argue it is clear that the documents bearing the stamps and signatures of McDevitt and Klein were not actually notarized by these notaries. County Defs.' Mem. of Law at 17-22.

**\*5** Hargrove does not deny these allegations. Instead, he resubmits the documents that McDevitt and Klein testify they did not notarize with his Affidavit in Opposition and insists that the documents "refute[ ] the assertions put forth by the defendants." Aff. in Opp. at 2.

### Discussion

### (1)

### Summary Judgment Standard

A motion for summary judgment is granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A court ruling on a summary judgment motion must construe the facts in the light most favorable

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

to the non-moving party and draw all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Williams v. Metropolitan Detention Center,* 418 F.Supp.2d 96, 100 (E.D.N.Y.2005).* Defendants, the moving party in this action, bear the burden of demonstrating the absence of a genuine issue of material fact. *Baisch v. Gallina,* 346 F.3d 366, 371 (2d Cir.2003).

As Hargrove is proceeding *pro se,* his complaint must be reviewed carefully and liberally, and be interpreted to "raise the strongest argument it suggests," *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001), particularly when civil rights violations are alleged, *see, e.g., McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). Plaintiff's complaint does not specify the legal theories upon which it relies, but, in construing his complaint to raise its strongest arguments, it will be interpreted to raise claims under 42 U.S.C. § 1983. *See, e.g., Dufort v. Burgos,* No. 04-CV-4940, 2005 WL 2660384, at *2 (E.D.N.Y. Oct. 18, 2005) (liberally construing plaintiff's complaint, which failed to specify the legal theory or theories upon which it rested, as, *inter alia,* a claim under 42 U.S.C. § 1983); *Williams,* 418 F.Supp.2d at 100 (same).

### (2)

### Prison Litigation Reform Act

### a. Purpose of the Prison Litigation Reform Act

The PLRA was intended to "reduce the quantity and improve the quality of prisoner suits." *Woodford v. Ngo,* --- U.S. ----, 126 S.Ct. 2378, 2387 (2006) (quoting *Porter v. Nussle,* 534 U.S. 516, 524 (2002)). It seeks to eliminate unwarranted interference with the administration of prisons by federal courts, and thus " 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Woodford,* 126 S.Ct. at 2387 (quoting *Porter,* 534 U.S. at 525). *See also Booth v. Churner,* 532 U.S. 731, 739 (2001). Formal grievance procedures allow prison officials to reconsider their policies, implement the necessary corrections and discipline prison officials who fail to follow existing policy. *See Ruggiero v. County of*

*Orange,* 467 F.3d 170, 177-78 (2d Cir.2006).

### b. The Exhaustion Requirement

The PLRA's "invigorated" exhaustion provision, 42 U.S.C. § 1997e(a), provides the mechanism to reduce the quantity and improve the quality of prisoners' suits by requiring that prison officials have the opportunity to address prisoner complaints through internal processes before allowing a case to proceed in federal court. *Woodford,* 126 S.Ct. at 2382 (citing *Porter,* 534 U.S. at 524). Section 1997e(a) provides that:

**\*6** [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983. *Woodford,* 126 S.Ct. at 2383; *Ruggiero,* 467 F.3d at 174; *Williams,* 418 F.Supp.2d at 100-01. The exhaustion provision is applicable to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings, as long as other forms of relief are obtainable through administrative channels. *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004); *see also Woodford,* 126 S.Ct. at 2382-83 ("[A] prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.") (citing *Booth,* 532 U.S. at 734).

In June 2006, the Supreme Court held that the PLRA requires "proper exhaustion" before a case may proceed in federal court. *Woodford,* 126 S.Ct. at 2387. "Proper exhaustion" requires a prisoner to use " 'all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).' " *Ruggiero,* 467 F.3d at 176 (citing *Woodford,* 126 S.Ct. at 2385 (emphasis in original)). Although the level of detail

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

necessary to properly exhaust a prison's grievance process will vary from system to system, *Jones v. Bock,* 127 S.Ct. 910, 2007 WL 135890, at *12 (Jan. 22, 2007), "proper exhaustion" under the PLRA " 'demands compliance with [that] agency's deadlines and other critical procedural rules.' " *Ruggiero,* 467 F.3d at 176 (quoting *Woodford,* 126 S.Ct. at 2386). Thus, the PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." *Ruggiero,* 467 F.3d at 176 (citing *Woodford,* 126 S.Ct. at 2382).

**(3)**

**Exhaustion Analysis: Hargrove did not Exhaust the Administrative Remedies Made Available by NCCF prior to Bringing Suit**

Section 1997e(a) of the PLRA applies to Hargrove's complaint; Hargrove was and continues to be confined in a correctional facility, *see Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004), and Hargrove's claim is about a "prison condition" within the meaning of the PLRA, *see Williams,* 418 F.Supp.2d at 101. *See also Sloane v. W. Mazzuca,* No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) (recognizing PLRA's application to complaint alleging retaliation by prison officials for plaintiff's refusal to consent to a PPD test). Accordingly, the merits of Hargrove's Section 1983 claims can only be addressed if it is first determined that Hargrove properly exhausted each claim under Section 1997e(a) of the PLRA before filing his complaint in federal court.

*7 Hargrove has submitted both forged [FN11] and authentic grievance forms in opposing defendants' motions for summary judgment. Excluding, for the moment, the forged documents, NCCF's records reflect that Hargrove did not submit his first grievance until after he filed the instant complaint. Williams Aff. at 1. Hargrove's first grievance complaining of unwanted PPD testing is dated November 19, 2004, Williams Aff. at 1, two to three months after Hargrove filed his complaint. Additionally, this first grievance, dated November 19, 2004, was submitted five months after the last PPD test was administered to him in June 2004. NHCC Defs.' 56.1 Statement ¶¶ 5,6. This five-month period far exceeds the five-day window

provided by NCCF's IGP. Since Hargrove failed to comply with the IGP's deadlines, he did not properly exhaust the available administrative remedies. *Ruggiero,* 467 F.3d at 176 (" 'untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement.' ") (quoting *Woodford,* 126 S.Ct. at 2382).

> FN11. Based on an examination of the documents themselves, as well as the uncontradicted testimony of the notaries performing services for prisoners at NCCF, *see generally* Klein Aff.; McDevitt Aff., and of the investigator in the Inmate Grievance Unit, *see generally* Williams Aff., it appears that many of the documents submitted by Hargrove are forgeries. However, in order to view the facts in the light most favorable to Hargrove, and so as to avoid making findings of fact in a summary judgment motion, for the purposes of the exhaustion analysis, all of the documents will be considered to be authentic. However, for purposes of the sanctions analysis, the documents will be explored and the consequences of Hargrove's misrepresentations will be addressed.

Furthermore, even if the falsified grievance forms Hargrove submitted in support of his claim are considered authentic, they are still untimely. The diagnostic TB tests (whether x-ray or PPD test) were given to Hargrove on March 15, 2002, May 24, 2003 and in June of 2004, but the grievance forms Hargrove submitted complaining of unwanted PPD tests are dated April 19, 2002, April 28, 2002, April 20, 2003, April 28, 2003 and November 19, 2004. None of these grievances were filed "within five days of the of the date of the act or occurrence giving rise to the grievance." Williams Aff. at 3. There is no evidence in the record suggesting that NCCF's IGP allows for a tolling of the five-day time limit in which to file a grievance. [FN12]

> FN12. Even if the submitted grievances had been filed within the proscribed time period, they only show that Hargrove's grievances reached an Inmate Grievance Coordinator, the first formal step of NCCF's three-step administrative grievance process; Hargrove never appealed to

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

the Chief Administrative Officer. By failing to take the next available step in NCCF's IGP, Hargrove failed to satisfy the mandatory exhaustion requirement. *See, e.g., Williams,* 418 F.Supp.2d at 101, 102 (dismissing *pro se* complaint where plaintiff could only show he exhausted two of the four-step process mandated by prison's administrative process).

While the letters to Reilly and sick call requests show that Hargrove attempted to bring his complaints about the PPD testing to the attention of the prison staff, *see, e.g.,* Aff. in Opp., Exs. A-D, NCCF's IGP requires use of formal grievance forms. Thus, writing complaint letters and submitting sick call requests did not properly exhaust NCCF's available administrative remedies. *See, e .g., Hernandez v. Coffey,* No. 99-CV-11615, 2006 WL 2109465, at *4 (S.D.N.Y. July 26, 2006) (holding letters did not satisfy plaintiff's exhaustion obligation); *Williams,* 418 F.Supp.2d at 101 (holding that because plaintiff's efforts to convey his medical condition through letters and conversations with the warden and medical staff did "not include the required steps of the PLRA's administrative remedy process," plaintiff failed to exhaust); *Mills v. Garvin,* No. 99-CV-6032, 2001 U.S. Dist. LEXIS 3333, at *8 (S.D.N.Y. Mar. 2, 2001) ("letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA").

As Hargrove failed to properly exhaust his administrative remedies, this action is precluded by 42 U.S.C. § 1997e(a) unless Hargrove can establish excuse for his failure to exhaust.

**(4)**

**No Grounds to Excuse Plaintiff's Failure to Exhaust**

**\*8** Exhaustion is an affirmative defense that defendants have the duty to raise. *Jones,* 2007 WL 135890, at * 8-11; *Sloane,* 2006 WL 3096031, at *4; *Williams,* 418 F.Supp.2d at 101. Once argued by the defendants, a plaintiff has an opportunity to show why the exhaustion requirement should be excused or why his failure to exhaust is justified. *See Ruggiero,* 467 F.3d at 175;

*Collins v. Goord,* 438 F.Supp.2d 399, 411 (S.D.N.Y.2006) ("[T]he Second Circuit has cautioned that 'while the PLRA's exhaustion requirement is "mandatory," certain caveats apply.'")(internal citations omitted). Thus, before concluding that a prisoner failed to exhaust available administrative remedies as required by Section 1997e(a) of the PLRA, the following three factors must be considered: (1) whether administrative remedies were actually available to the prisoner; (2) whether defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; and (3) whether special circumstances, such as a reasonable misunderstanding of the grievance procedures, exist justifying the prisoner's failure to comply with the exhaustion requirement. *Ruggiero,* 467 F.3d at 175 (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)). FN13

FN13. Courts in the Second Circuit have questioned what effect, if any, the Supreme Court's recent decision in *Woodford* requiring "proper exhaustion" may have on the three-step *Hemphill* inquiry. The Second Circuit has yet to address this issue. *See Ruggiero,* 467 F.3d at 175-76 (declining to "determine what effect *Woodford* has on our case law in this area ... because [plaintiff] could not have prevailed even under our pre-*Woodford* case law"). To date, district courts have acknowledged the tension, but resolved to apply *Hemphill* to exhaustion claims until instructed otherwise by the Second Circuit. *See,e.g., Larkins v. Selsky,* 04-CV-5900, 2006 WL 3548959, at *9, n. 4 (S.D.N.Y. Dec. 6, 2006) (applying the current law of the Second Circuit to exhaustion claims); *Sloane,* 2006 WL 3096031, at *5 ("Until such time as the Court of Appeals considers the impact of *Woodford,* if any, on its prior rulings, this Court must follow the law of the Second Circuit. The Court will therefore apply the current law of this circuit to the exhaustion claims."); *Collins v. Goord,* 438 F.Supp.2d at 411 n. 13 (acknowledging that *Woodford* and *Hemphill* may be in tension, but deciding exhaustion claims under *Hemphill* inquiry); *Hernandez v. Coffey,* No.99-CV11615, 2006 WL 2109465, at *3 (S.D.N.Y. July 26, 2006) (same). Here, Hargrove does not prevail under *Hemphill;* therefore, there is no occasion to address the potential effect *Woodford* may

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

have had in his case.

**a. Whether administrative remedies were "available" to Hargrove**

The first step in the *Hemphill* inquiry requires a court to determine whether administrative remedies were available to the prisoner. *Hemphill,* 380 F.3d at 686. The test for assessing availability is an "objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Id.* at 688 (internal quotation marks omitted). In making this determination, "courts should be careful to look at the applicable set of grievance procedures." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004). Exhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, *Ruggiero,* 467 F.3d at 179, or where defendants' behavior prevents plaintiff from seeking administrative remedies,[FN14] *Hemphill v. State of New York,* 380 F.3d 680, 686 (2d Cir.2004).

> FN14. Case law does not clearly distinguish between situations in which defendants' behavior renders administrative remedies "unavailable" to the plaintiff and cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense because of their behavior. As such, there will be some overlap in the analyses.

Here, Hargrove has not claimed that NCCF's administrative grievance procedure was unavailable to him. In fact, Hargrove demonstrated his access to and knowledge of NCCF's IGP by filing proper grievances on November 19, 2004 and on May 10, 2005. Hargrove did not dispute any part of Investigator Williams's affidavit detailing the IGP and its availability to inmates since 2001. Specifically, Hargrove did not dispute, upon entering the facility, that he received a copy of the inmate handbook outlining the IGP. He has not claimed that he is unfamiliar with or unaware of NCCF's IGP. Hargrove has not alleged that prison officials failed to advance his grievances [FN15] or that they threatened him or took any other action which effectively rendered the administrative process unavailable.

FN15. Although not specifically alleged, interpreting the evidence to "raise the strongest argument," Hargrove may be arguing that NCCF's IGP was not available to him because the Grievance Coordinator failed to respond to his grievances. In the single grievance regarding PPD tests that defendants concede is authentic, Hargrove writes, "[n]ow for the third time your office refused to answer my grievances so please look into this matter because the T.B. shot is [sic] effecting my health." 11/19/04 Grievance. This language implies that Hargrove filed grievances in the past and received no response from the Inmate Grievance Coordinator. Furthermore, Hargrove wrote on one of the submitted copies of the November 19, 2004 grievance that "[t]his is the only accepte[sic] that Plaintiff got back from all grievances and letters that the Plaintiff sent to Sheriff Riley and his medical staffs about his staff making [sic] take T.B. test for 3 year[s]." County Defs' Not. of Motion, Ex. A, 11/19/2004 grievance.

First, it must be reiterated that filing of the initial grievances was untimely. However, even assuming *arguendo* that the original grievances had been timely filed, district courts in the Second Circuit have held that the "lack of a response from the [Inmate Grievance Review Committee] does not excuse an inmate's obligation to exhaust his remedies through available appeals." *Hernandez v. Coffey,* 2006 WL 2109465, at *3-5. *See also Hemphill,* 380 F.3d at 686 ("Threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system"); *Acosta v. Corr. Officer Dawkins,* No. 04-CV-6678, 2005 WL 1668627, at *3 (S.D.N.Y. July 14, 2005) (inmate required to appeal lack of response to exhaust administrative remedies); *Mendoza v. Goord,* No. 00-CV-0146, 2002 U.S. Dist. LEXIS 22573, at *6 (S.D.N.Y. Nov. 21, 2002) ("If, as a result of a negligent error by prison officials-or even their deliberate attempt to sabotage a prisoner's grievance-the prisoner

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

[does not receive a response] on his complaint, he is not thereby forestalled from appealing"). Hargrove did not assert or offer evidence suggesting that he appealed the unresponsiveness or that those appeals were not advanced.

**\*9** Additionally, Hargrove's transfer from NCCF to Sing Sing Correctional Facility ("Sing Sing") in July 2005 did not excuse his previous failure to properly exhaust. *See, e.g., Sims v. Blot,* No. 00-CV-2524, 2003 WL 21738766, at \*4 (S.D.N.Y. July 25, 2003) (determining that failure to exhaust administrative remedies is not excused by transfer to another facility); *Santiago v. Meinsen,* 89 F.Supp.2d 435, 440-41 (S.D.N.Y.2000) (determining that plaintiff should not be "rewarded" for failing to participate in grievance procedure before being transferred). Hargrove had ample opportunity to properly file his grievances and to appeal their results as required by NCCF's procedures while he was imprisoned at NCCF. The last PPD test Hargrove complains of was given in 2004; therefore, Hargrove had until June or July of 2004 to timely file his grievance in accordance with NCCF's IGP. Hargrove was not transferred to Sing Sing until July 2005. County Defs.' Mem. of Law at 2. Thus, Hargrove's transfer cannot excuse his previous failure to properly exhaust.

**b. Estoppel**

The second step of the inquiry asks whether defendants are estopped from raising exhaustion as a defense. Specifically, "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (internal citations omitted).

Here, Hargrove has not made any statements that would permit a finding that defendants should be estopped from raising the affirmative defense of exhaustion or that defendants waived the right to raise the defense. Defendants first raised the PLRA's exhaustion requirement as an affirmative defense in their respective answers. *See* County Defs.' Am. Answer at 3; NHCC Defs.' Answer at

1. County Defendants raised it again in their motion for summary judgment. *See* County Defs.' Mem of Law at 15-23. Thus, defendants are not estopped from raising the affirmative defense now. *See, e.g., Sloane,* 2006 WL 3096031, at \*8 (exhaustion defense not waived where defendants first raised it in their motion to dismiss).

Additionally, defendants have not threatened Hargrove or engaged in other conduct preventing him from exhausting the available administrative remedies. *Cf. Ziemba v. Wezner,* 366 F.3d 161, 162 (2d Cir.2004) (holding defendants were estopped from asserting non-exhaustion because of prison officials' beatings, threats and other conduct inhibiting the inmate from filing proper grievances); *Feliciano v. Goord,* No. 97-CV-263, 1998 WL 436358, at \*2 (S.D.N.Y. July 27, 1998) (holding defendants were estopped from asserting non-exhaustion where prison officials refused to provide inmate with grievance forms, assured him that the incidents would be investigated by staff as a prerequisite to filing a grievance, and provided prisoner with no information about results of investigation). Hargrove has not argued otherwise. *See Ruggiero,* 467 F.3d at 178 (holding defendants were not estopped from asserting a failure to exhaust defense where plaintiff pointed to no affirmative act by prison officials that would have prevented him from pursing administrative remedies); *Sloane,* 2006 WL 3096031, at \*8 (finding no estoppel where plaintiff did not argue that defendants prevented him from pursuing the available administrative remedies); *Hernandez,* 2006 WL 2109465, at \*4 (finding no estoppel where plaintiff did not argue that any threats or intimidation prevented him from pursuing his appeals). Thus, for the same reasons that administrative remedies were not deemed unavailable to Hargrove, defendants are not estopped from raising a failure to exhaust defense.

**c. Special circumstances**

**\*10** Even where administrative remedies are available and the defendants are not estopped from arguing exhaustion, the court must "consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " *Hemphill,* 380 F.3d at 688 (quoting *Giano,* 380 F.3d at 676). For example, plaintiff's reasonable interpretation of regulations differing from

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

prison official's interpretation has been held to constitute a "special circumstance." *Giano,* 380 F.3d at 676-77. No special circumstances have been alleged that would excuse Hargrove from availing himself of administrative remedies. *See Sloane,* 2006 WL 3096031, at *8; *Freeman v. Goord,* No. 02-CV-9033, 2004 U .S. Dist. LEXIS 23873, at * 9-10 (S.D.N.Y.2004) (granting motion to dismiss where "there is no evidence in the record ••• of any 'special circumstances' in this action.")

**(5)**

**Hargrove's Failure to Exhaust, in Addition to his Fraud on the Court, Warrants Dismissal with Prejudice**

Hargrove has not sufficiently rebutted the defendants' assertion of failure to exhaust, and a liberal reading of his submissions does not reveal any grounds to excuse that failure.

Because Hargrove filed a complaint in federal court before filing a grievance, permitting his unexhausted and unexcused claim to proceed would undercut one of the goals of the exhaustion doctrine by allowing NCCF to be haled into federal court without the "opportunity to correct its own mistakes with respect to the programs it administers." *Woodford,* 126 S.Ct. at 2385. *See also Ruggiero,* 467 F.3d at 178 (citing *Porter,* 534 U.S. at 525). Thus, his complaint must be dismissed.

In general, dismissal without prejudice is appropriate where plaintiff has failed to exhaust but the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004). Dismissal with prejudice is appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry,* 366 F.3d at 88. Here, Hargrove's administrative remedies were available to him during his entire period of confinement at NCCF. He remained incarcerated in NCCF throughout the time period in which he alleges the PPD tests were given. He could have exhausted remedies for his grievances at any time. Therefore, Hargrove had ample opportunity to

seek administrative remedies but failed to do so. Because there is no evidence in the record that administrative remedies are still available to Hargrove, as the five-day time period had run, and because Hargrove has alleged no special circumstances justifying his failure to exhaust, his complaint is accordingly dismissed with prejudice. *Berry,* 366 F.3d at 88 (upholding dismissal with prejudice where plaintiff had no justification for his failure to pursue administrative remedies while they were available.)

**\*11** Additionally, defendants' have moved for sanctions based on Hargrove's alleged submission of falsified evidence. If a party commits a fraud on the court, the court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process. *Shangold v. The Walt Disney Co.,* No. 03-CV-9522, 2006 WL 71672, at *4 (S.D.N.Y. January 12, 2006) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991)). Fraud upon the court has been defined as "fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko,* 860 F.2d 556, 559 (2d Cir.1988); *McMunn v. Mem'l Sloan-Kettering Cancer Center,* 191 F.Supp.2d 440, 445 (S.D.N.Y.2002). In order for a court to grant sanctions based upon fraud, it must be established by clear and convincing evidence that a party has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by ... unfairly hampering the presentation of the opposing party's claim or defense." *McMunn,* 191 F.Supp.2d at 455 (quoting *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1119 (1st Cir.1989).

After carefully reviewing the allegedly fraudulent documents, it must be concluded that Hargrove consciously falsified these documents. *See, e.g., Shangold,* 2006 WL 71672, at *1, *3 (finding clear and convincing evidence of fraud where plaintiffs fabricated a timeline and plot outlines to advance their claims); *McMunn,* 191 F.Supp.2d at 446 (finding clear and convincing evidence of fraud where plaintiff edited audio tapes and represented that they were unedited during discovery). The notaries performing services for prisoners at NCCF testify that they never notarized many of the documents supplied by Hargrove. *See* Klein Aff.; McDevitt Aff. Furthermore, a visual examination of the documents themselves makes it clear that many of the documents submitted by Hargrove are forgeries.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

In considering what sanction to impose, courts consider the following five factors: (i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the plaintiffs; (iii) whether there was a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future. *Scholastic, Inc. v. Stouffer,* 221 F.Supp.2d 425, 444 (S.D.N.Y.2002) (citing *McMunn,* 191 F.Supp.2d at 461).

Here, Hargrove's deception was not an isolated instance; he fabricated the dates on many grievance forms, in addition to improperly duplicating notary stamps on complaint letters to make them look authentic. Klein Aff. at 2; McDevitt Aff. at 2; County Defs.' 56.1 Statement ¶¶ C3, D3. He submitted these forgeries to defendants during discovery and again as exhibits to his Affidavit in Opposition to Defendant's Motion for Summary Judgment. A severe sanction is warranted as Hargrove's forgeries were intentional, he never corrected them once their authenticity was challenged and he continues to insist on their veracity. Aff. in Opp. at 1-4. Given that there is clear and convincing evidence that Hargrove has continuously and consciously perpetrated a fraud on the court through his submission of fraudulent documents and sworn affirmations of those documents' authenticity, dismissal with prejudice is especially appropriate. *See, e.g., Shangold,* 2006 WL 71672, at *5 (dismissing with prejudice where plaintiffs fabricated evidence to advance their claims); *Scholastic,* 221 F.Supp.2d at 439-444 (dismissing with prejudice where plaintiff produced seven pieces of falsified evidence); *McMunn,* 191 F.Supp.2d at 445 (dismissing with prejudice where plaintiff "lie[d] to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process").

**Conclusion**

**\*12** Because Hargrove did not satisfy the exhaustion requirement under the PLRA, defendants' motions for summary judgment are granted. Further, considering the fraud Hargrove perpetrated on the court, the claims are dismissed against all defendants with prejudice. The Clerk of the Court is directed to close the case.

SO ORDERED:

E.D.N.Y.,2007.
Hargrove v. Riley
Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Peter WHEELER, Plaintiff,
v.
George PATAKI, et al., Defendants.
**No. 9:07-CV-0892 (TJM/GHL).**

March 11, 2009.

West KeySummary
**Constitutional Law 92** ⬡ **4338**

92 Constitutional Law
  92XXVII Due Process
    92XXVII(G) Particular Issues and Applications
      92XXVII(G)15 Mental Health
        92k4338 k. Confinement and Conditions
Thereof. Most Cited Cases

**Mental Health 257A** ⬡ **436.1**

257A Mental Health
  257AIV Disabilities and Privileges of Mentally
Disordered Persons
    257AIV(E) Crimes
      257Ak436 Custody and Confinement
        257Ak436.1 k. In General. Most Cited
Cases
A state inmate, who had been convicted of attempted rape,
stated a claim under § 1983 for an alleged deprivation of
due process when he did not receive a hearing before
being sent to a psychiatric facility beyond his conditional
release date. The New York Corrections Law, rather than
the New York Mental Hygiene Law, applied and required
that two examining physicians be court-appointed, a court
approve the commitment order after notice to the inmate,
his or her closes friend or relative and the Mental Hygiene
Legal Service, and a pre-commitment hearing be held at

the inmate's request. U.S.C.A. Const.Amend. 14; 42
U.S.C.A. § 1983; McKinney's Correction Law § 402;
McKinney's Mental Hygiene Law § 9.27.

Peter Wheeler, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Adrienne J. Kerwin, Esq., of Counsel, New
York, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* action brought pursuant to 42 U.S.C. §
1983 was referred by this Court to the Hon. George H.
Lowe, United States Magistrate Judge, for a Report and
Recommendation pursuant to 28 U.S .C. § 636(b) and
L o c a l   R u l e   N . D . N . Y .   7 2 . 3 ( c ) .   T h e
Report-Recommendation dated February 5, 2009
recommended that Defendants' motion for judgment on the
pleadings (dkt.# 26) be granted in part and denied in part
such that Plaintiff's Eighth Amendment claim be dismissed
and that Defendants be directed to respond to Plaintiff's
due process and retaliation claims. No objections to the
Report and Recommendation have been filed and the time
to do so has expired. On February 25, 2009, Defendants
filed an Answer to Plaintiff's Second Amended Complaint.
*See* Ans. [dkt. # 51].

After examining the record, this Court has determined that
the Report-Recommendation is not subject to attack for
plain error or manifest injustice. Accordingly, the Court
adopts the Report-Recommendation for the reasons stated
therein.

It is therefore,

**ORDERED** that Defendants' motion for judgment on the
pleadings (dkt.# 26) is **GRANTED IN PART and**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

**DENIED IN PART.** The motion is granted in that Plaintiff's Eighth Amendment claim is **DISMISSED,** and denied as to Plaintiff's due process and retaliation claims.

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Peter Wheeler alleges that he was wrongfully confined to a psychiatric facility after his conditional release date and that Defendants retaliated against him for filing grievances and state *habeas corpus* proceedings. For the reasons that follow, I recommend that Defendants' motion for judgment on the pleadings (Dkt. No. 26) be denied in part and granted in part.

**I. BACKGROUND**

**A. Procedural History**

Plaintiff filed his original complaint on August 27, 2007. At that time, he was confined at Cayuga Correctional Facility. (Dkt. No. 1.) He filed an amended complaint on the same date. (Dkt. No. 5 .) On October 10, 2007, the Court ordered Plaintiff to file a second amended complaint. (Dkt. No. 8.) The order noted that the amended complaint did not include a short and plain statement of the facts giving rise to relief or allege the personal involvement of some defendants, that certain parts of the amended complaint appeared barred by the statute of limitations, and that Plaintiff's request to be released from prison needed to be raised in a petition for writ of *habeas corpus.*

Plaintiff did not timely file a second amended complaint and judgment was entered. (Dkt. No. 12.) On February 12, 2008, the Court vacated judgment and gave Plaintiff 30 additional days to file a second amended complaint. (Dkt.

No. 14.) The Court ordered that:

**\*2** [a]ny second amended complaint submitted must provide specific details about the nature of plaintiff's claims and the injury he has allegedly suffered as specifically related to each defendant. For example, if plaintiff's civil rights were violated, he must set forth what rights, how, and by whom. Vague or conclusory statements that a defendant violated plaintiff's rights are not sufficient to support a claim. The claims included in the second amended complaint must relate to wrongdoing that occurred at Auburn Correctional Facility or the Central New York Psychiatric Center.

(Dkt. No. 14 at 4.)

Plaintiff filed the second amended complaint on February 27, 2008. (Dkt. No. 16.) Defendants George Pataki, Donald Sawyer, Mohammed Igbal, Nurul Hogue, and Harold Graham were served and/or entered their appearances. (Dkt.Nos.20-25, 33.) Defendants now move for judgment on the pleadings [FN1] (Dkt. No. 26.) Plaintiff has opposed the motion. (Dkt.Nos.31, 36, 44.)

FN1. The docket and the title page of Defendants' memorandum of law refer to the motion as a motion to dismiss. However, Defendants' notice of motion states that they are moving pursuant to Federal Rule of Civil Procedure 12(c), which governs motions for judgment on the pleadings. As discussed below, motions to dismiss and motions for judgment on the pleadings are determined by the same standard.

**B. Summary of Plaintiff's Second Amended Complaint**

Liberally construed, the second amended complaint alleges as follows:

Plaintiff, a state prisoner serving a 6 to 12 year sentence for attempted rape, had a conditional release date of October 18, 2006. (Dkt. No. 16 at 10 and ¶¶ 6-7.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

Plaintiff's conditional release date was based on his completion of several programs, and Plaintiff was told that the only "way this great reward can vanish [was] if Plaintiff hurt somebody drugs or a Tier III misbehavior report." (Dkt. No. 16 at 7.) Plaintiff did not hurt anyone, use drugs, or receive a Tier III misbehavior report. (Dkt. No. 16 at 7.) At some point, then-governor George Pataki signed an executive order directing that sex offenders be civilly committed. (Dkt. No. 16 at ¶ 6.) Defendants Mohammed Igbal and Nurul Hogue evaluated Plaintiff on October 12, 2006. As a result of these doctors' evaluations, Plaintiff was confined at Central New York Psychiatric Center ("CNYPC") beyond his conditional release date. *Id.* Defendant Harold D. Graham, the Superintendent of Auburn Correctional Facility, "sanction[ed]" the doctors' report. *Id.* Plaintiff alleges that there was never a hearing "to determine the truth behind" the doctors' evaluations. *Id.*

Plaintiff claims that "[a]lmost immediately" after he filed grievances regarding his commitment at CNYPC, Defendants Pataki and Donald Sawyer (the Director of CNYPC) "saw fit" for a female correctional officer to accuse Plaintiff of making sexual advances toward her. (Dkt. No. 16 at 14.) This "lead Plaintiff back to incarceration" in the Oneida County Jail. (Dkt. No. 16 at 14.)

According to the public website maintained by the New York Department of Correctional Services, Plaintiff was returned to state prison on a parole violation on April 20, 2007. Thereafter, he was transferred to Cayuga Correctional Facility, the Clinton Annex and Attica. (Dkt. No. 16 at 14.)

Plaintiff claims that Defendants' actions violated his right to procedural due process because he did not receive a hearing before being sent to CNYPC. He further alleges that Defendants' violated his right to access to the courts [FN2]. (Dkt. No. 16 at ¶ 7.) He also alleges that Defendants Igbal, Hogue, Sawyer, and Graham were deliberately indifferent to Plaintiff's health and failed to provide him adequate medical care. (Dkt. No. 16 at 13.) Finally, he alleges that Defendants Pataki and Sawyer retaliated against him. (Dkt. No. 16 at 14.) Plaintiff alleges that he suffered "pain and mental anguish. He continue[s] to suffer from migraine headaches." (Dkt. No. at 16 at 13.)

He requests $500,000 in damages, unspecified declaratory relief, and unspecified injunctive relief. (Dkt. No. 16 at 7 and ¶ 9.)

> FN2. Plaintiff's access to the courts claim appears to be based on the lack of a hearing prior to his commitment to CNYPC. I have analyzed this claim as part of Plaintiff's procedural due process claim.

**C. Summary of Grounds in Support of Defendants' Motion**

**\*3** Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 26.) Defendants argue that (1) the complaint fails to comply with this Court's February 12, 2008, order; (2) the claim based upon the failure to release Plaintiff on his conditional release date is barred by the rule in *Heck v. Humphrey;* (3) the commitment of Plaintiff to CNYPC without a hearing was lawful; (4) the complaint fails to state a claim of inadequate medical treatment;(5) the complaint fails to state an actionable retaliation claim; and (6) Plaintiff failed to exhaust his administrative remedies regarding his retaliation claim. (Dkt. No. 26-2.)

**D. Summary of Plaintiff's Response to Defendants' Arguments**

Plaintiff has filed three responses to the Defendants' motion. (Dkt. Nos. 31, 36 and 44.) These documents essentially reiterate the allegations of the second amended complaint.

**II. LEGAL STANDARD GOVERNING MOTIONS FOR JUDGMENT ON THE PLEADINGS**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enter. ., 448 F.3d 518, 521 (2d Cir.2006).* Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

"failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2); FN3 or (2) a challenge to the legal cognizability of the claim. FN4

FN3. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3 ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

FN4. *See* *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of

disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, 2004 WL 2613993, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ; *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, 2002 WL 313156, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." FN5 The main purpose of this rule is to "facilitate a proper decision on the merits." FN6 A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." FN7

FN5. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also* *Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

FN6. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

FN7. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[FN8] However, it is well established that even this liberal notice pleading standard "has its limits."[FN9] As a result, several Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard.[FN10]

FN8. *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with

limited exceptions [including] averments of fraud or mistake.").

FN9. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

FN10. *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord, Dura Pharm.,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N. Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

claim which would entitle him to relief." 550 U.S. 544, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).[FN11] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

> FN11. The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

*4 More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id* .

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ).[FN12] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally

afforded *pro se* litigants).[FN13]

> FN12. *See, e.g.,* Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted]; Goldstein v. Pataki, 07-CV-2537, 2008 U.S.App. LEXIS 2241, 2008 WL 269100, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

> FN13. *See, e.g.,* Jacobs v. Mostow, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); Boykin v. KeyCorp., 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

It should be emphasized that Rule 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a) (2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[FN14] There must still be enough facts alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

FN14. For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by

the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatitis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[FN15] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.* "[FN16] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

FN15. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

FN16. *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

**\*5** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN17] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[FN18] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[FN19] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[FN20] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[FN21]

FN17. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at \*1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the

Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. See *Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

FN18. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

FN19. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

FN20. *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at \*2 (E.D.N.Y. Oct.24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

FN21. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy,* 05-CV-0836, 2007 WL 1343649, at \*3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint-the fact that plaintiff enjoyed no constitutional right of access to DOCS'

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

established grievance process-was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell,* 07-CV-0166, 2008 WL 3582743, at *2 (D.Vt. Aug.13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint-lack of subject-matter jurisdiction and lack of standing-were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.,* 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint-which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence-were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba,* 00-CV-1309, 2001 WL 58834, at *11 (D.Conn. Jan.23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint-the fact that the defendants were protected from liability by Eleventh Amendment immunity-was substantive and not formal in nature, rendering repleading futile).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [FN22] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12. [FN23] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [FN24] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [FN25]

FN22. *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the

rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

FN23. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691] [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

FN24. *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

adverse party").

FN25. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

## III. ANALYSIS

### A. Compliance With February Order

Defendants argue that the second amended complaint does not comply with this Court's February 12, 2008, order and should thus be dismissed. (Dkt. No. 26-2 at 2.) Specifically, Defendants argue that "it remains impossible to ascertain plaintiff's causes of action, the alleged facts that support them, what acts of the named defendants allegedly caused deprivations of plaintiff's rights or what damages were allegedly suffered by the plaintiff." *Id.* This argument is without merit. This Court has already determined that the second amended complaint complies with the February 12, 2008, order, noting that "despite the irregularity of the pleading, the nature of plaintiff's claims [is] discernible and the [second] amended complaint is susceptible to a meaningful response by defendants." (Dkt. No. 17 at 2.) Therefore, the second amended complaint is not subject to dismissal on this ground.

### B. *Heck v. Humphrey*

Defendants argue that Plaintiff's claims regarding the failure to release him on his conditional release date must be dismissed pursuant to *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). (Dkt. No. 26-2 at 3.) In *Heck,* the Supreme Court held that

in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus.*

*6 *Heck,* 512 U.S. at 486-87. If, however, a prisoner has been released from the confinement that he challenges, "a concrete and continuing injury that is a collateral consequence of the detention and can be remedied by granting the [*habeas* ] writ must exist" in order for the *Heck* rule to apply. *So v. Reno,* 251 F.Supp.2d 1112, 1121 (E.D.N.Y.2003) (internal quotation marks omitted) (citing, *inter alia, Spencer v. Kemma,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)). Defendants argue that Plaintiff's claim regarding his confinement to CNYPC is barred by *Heck* (and, implicitly, not saved by the collateral consequences rule) because Plaintiff "remains incarcerated and his sentence has not been invalidated." (Dkt. No. 26-2 at 3.)

*Heck* does not bar Plaintiff's action because Plaintiff was no longer confined at CNYPC when he filed this action FN26. In order to challenge a confinement after release from that confinement, "a concrete and continuing injury that is a collateral consequence of the detention and can be remedied by granting the writ must exist." *So v. Reno,* 251 F.Supp.2d 1112, 1121 (E.D.N.Y.2003) (internal quotation marks omitted) (citing, *inter alia, Spencer v. Kemma,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)). No such concrete and continuing injuries are present here. As a result, Plaintiff cannot satisfy the case-or-controversy requirement to bring a *habeas* claim regarding his CNYPC confinement. Indeed, when he attempted to bring such a *habeas* claim, this Court dismissed it as moot based on his release from CNYPC. *Wheeler v. Pataki,* No. 9:07-CV-0863 (NAM/DEP), Dkt. No. 10 (N.D.N.Y. Feb. 19, 2008) ("[P]etitioner has been released from the challenged confinement at CNYPC and has not demonstrated that he suffered any collateral consequences from that confinement sufficient to establish a concrete injury that can be remedied by granting the writ [and thus] the Court finds that his request for *habeas corpus* release is moot and hereby dismisses the action."). "[W]here federal *habeas corpus* is not available to address constitutional wrongs, § 1983 must be." *Jenkins v. Haubert,* 179 F.3d 19, 26 (2d Cir.1999). See also *Huang v. Johnson,* 251 F.3d 65 (2d Cir.2001) (*Heck* rule did not bar action challenging duration of confinement brought after juvenile was released from juvenile system). Therefore, Plaintiff's claims regarding his confinement at CNYPC are not barred by the *Heck* rule.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

FN26. Although Plaintiff was incarcerated when he brought this action, that incarceration was the result of a parole violation and not a continuation of the CNYPC confinement that he challenges in this case.

**C. Due Process Claim**

Defendants argue that even if Plaintiff's claim regarding his confinement at CNYPC is not barred by *Heck,* the second amended complaint fails to state a claim because the face of the complaint reveals that Plaintiff received all the process that was due. (Dkt. No. 26-2 at 4.) Specifically, Defendants state that

a person may be involuntarily placed in a psychiatric facility without a hearing upon a finding by two physicians that he or she is mentally ill and in need of involuntary care and treatment. The complaint alleges that the plaintiff was placed in Central New York Psychiatric Center upon the reports of defendant physicians Igbal and Hogue. Such placement is lawful and proper pursuant to Correction Law Section 402 and Mental Hygiene Law Section 9.27. The procedures set out in the Correction Law and Mental Hygiene Law provide for a hearing after the involuntary placement of a person in a psychiatric facility upon the demand of the committed individual. The second amended complaint fails to allege that the plaintiff demanded such a hearing.

*7 (Dkt. No. 26-2 at 4.)

Defendants misstate the process that is due. Within a month of Plaintiff's commitment to CNYPC, the New York Court of Appeals issued a decision in a *habeas* case filed on behalf of former prisoners who, like Plaintiff, were involuntarily committed to psychiatric treatment centers just prior to their parole, conditional release or release dates. These former prisoners had been committed under the procedures mandated by the Mental Hygiene Law rather than the procedures mandated by Corrections Law section 402. The Corrections Law procedures are considerably more rigorous. Under the Mental Hygiene Law, no pre-commitment hearing is required and there is

no court involvement in the process. Corrections Law section 402, on the other hand, requires that the two examining physicians be court-appointed, that a court approve the commitment order after notice to the inmate, his or her closest friend or relative and the Mental Hygiene Legal Service, and that a pre-commitment hearing be held at the request of the inmate. The Court of Appeals held that prison officials must follow the procedures mandated by Corrections Law section 402 rather than the procedures mandated by the Mental Hygiene Law when committing prisoners whose terms had not yet expired. *New York ex rel. Harkavy v. Consilvio,* 7 N.Y.3d 607, 825 N.Y.S.2d 702, 859 N.E.2d 508 (2006). Regarding the petitioners who had been improperly committed under the Mental Hygiene Law rather than the Corrections Law and remained involuntarily committed, the court ordered that they "be afforded an immediate retention hearing." *Id.. at 614, 825 N.Y.S.2d 702, 859 N.E.2d 508.*

Contrary to Defendants' argument, the face of the second amended complaint does not show that Plaintiff received all of the procedure that was due under Corrections Law section 402. It does not show that Defendants Igbal and Hogue were court-appointed or that the court approved the commitment order after notice and an opportunity for a pre-commitment hearing. It does not show that Plaintiff received an immediate retention hearing in the wake of the Court of Appeals' decision. Indeed, the second amended complaint alleges that after the Court of Appeals "pass[ed] a law that all sex offenders should receive an immediate hearing ... Plaintiff ... never receive hearing." (Dkt. No. 16 at 11.) I recommend, therefore, that Defendants' motion for judgment on the pleadings with respect to Plaintiff's procedural due process claim be denied FN27.

FN27. Defendants also argue, cursorily and without citation to authority, that the second amended complaint fails to adequately allege that Defendants Igbal, Hogue and Sawyer were personally involved with the alleged procedural due process violation. (Dkt. No. 26-2 at 4.) " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 [2d Cir.1991] ). In order to prevail on a cause of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant. If the defendant is a supervisory official, such as a DOCS Commissioner or Deputy Commissioner, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct. In other words, supervisory officials may not be held liable merely because they held a position of authority. Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323-324 (2d Cir.1986) (setting forth four prongs). The undersigned finds that the second amended complaint adequately alleges Defendants' personal involvement. (Dkt. No. 16 at 10, 12.)

## D. Eighth Amendment

The second amended complaint alleges that Defendants Iqbal, Hogue, Graham and Sawyer were deliberately indifferent to Plaintiff's medical needs. Specifically, Plaintiff alleges that Iqbal and Hogue "fail[ed] to provide adequate medical care to him-report of follow up care on the outside/in society," that Sawyer "fail[ed] to provide adequate medical care to him-by opening his door at Central New York Psychiatric Center base[d] upon two medical doctor's report," and that Graham "exercised deliberate indifference to Wheeler's health and saftey by signing his approval for M.D. Mohammad Iqbal and M.D. Nurul Hogue medical report which lead to Wheeler being transferred to Central New York Psychiatric Center."

(Dkt. No. 16 at 12-13.) Defendants argue that the second amended complaint fails to state an Eighth Amendment medical care claim because (1) Plaintiff has failed to identify any serious medical need for which he required medical attention; and (2) it is "completely devoid of any allegations that any defendants were deliberately indifferent to [P]laintiff's medical needs." (Dkt. No. 26-2 at 3.) Defendants are correct.

**\*8** "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, 'sufficiently serious'.... [Second,] a prison official must have a 'sufficiently culpable state of mind.' " *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety...." *Farmer,* 511 U.S. at 834. Generally, to prevail on a claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Chance,* 143 F.3d at 702. Here, Plaintiff alleges no such condition. Indeed, the second amended complaint does not include any information whatsoever about *any* condition from which Plaintiff suffers. Therefore, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim.

## E. Retaliation

Defendants argue that Plaintiff has not stated a cause of action for retaliation. (Dkt. No. 26-2 at 5.)

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak,*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

389 F.3d 379, 380-81 (2d Cir.2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *See* Gill, 389 F.3d at 381-383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See* Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citations omitted), *overruled on other grounds,* Swierkewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

**\*9** To prevail on a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff-namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Gill, 389 F.3d at 380 (citing Dawes v. Walker, 239 F.3d 489, 492 [2d. Cir.2001] ). Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996) [citations omitted].

Read liberally and taking all allegations as true, the second amended complaint states a claim for retaliation. It alleges that (1) Plaintiff engaged in protected conduct by filing grievances and a state *habeas corpus* action against Defendants Pataki and Sawyer; (2) that those Defendants took adverse action against Plaintiff because they "saw fit for .... official Hanley to false speak toward Plaintiff stating Wheeler came upon her in the wrong way," resulting in charges being brought against Plaintiff; and (3) Defendants took this action "in retaliation for the grievances" one month after Plaintiff filed his state *habeas corpus* action FN28. (Dkt. No. 16 at 14.) These allegations meet the Rule 8 standard of providing Defendants with fair notice of the nature of the claim and the grounds on which the claim rests, thus enabling Defendants to answer.

FN28. "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action. *See* Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *accord* Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir.2001)." *Espinal v. Goord,* --- F.3d ----, No. 07-0612 at 18 (2d Cir. Feb. 2, 2009).

Defendants also argue that Plaintiff has failed to exhaust his administrative remedies regarding the retaliation claim. (Dkt. No. 26-2 at 5-6.)

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." FN29 "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." FN30 The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program.FN31

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

FN29. 42 U.S.C. § 1997e.

FN30. *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

FN31. 7 N.Y.C.R.R. § 701.7.

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the PLRA is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Rule 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12[b][1] ). See, e.g., *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit ..., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *Snider v. Melindez,* 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available. Snider's answers [on a form complaint] cannot establish that.").

**\*10** In 2007, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights cases. See *Jones v. Block,* 549 U.S. 199, 127 S.Ct. 910, 914-915, 918-923, 166 L.Ed.2d 798 (2007). A prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available administrative remedies in order to state an actionable claim under 42 U.S.C. § 1983. *Block,* 127 S.Ct. at 919-21. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 921. If a prisoner chooses to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id.* at 920-21.

Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a Fed.R.Civ.P. 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes.

Here, Plaintiff alleges that he filed a grievance regarding "the facts relating to [his] complaint" and "wrote the supt. of the facility" and that the final result was "nothing-always nothing." (Dkt. No. 16 at ¶ 4.) Defendants have not argued that Plaintiff has "pleaded himself out of court" regarding his retaliation claim, and I see nothing on the face of the second amended complaint that indicates that he has done so. Therefore, I recommend that Defendants' motion for judgment on the pleadings be denied with respect to Plaintiff's cause of action for retaliation.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No. 26) be **GRANTED IN PART** and **DENIED IN PART.** I recommend that Plaintiff's Eighth Amendment claim be dismissed and that Defendants be directed to respond to Plaintiff's due process and retaliation claims.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.**[FN32]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 674152 (N.D.N.Y.)
(Cite as: 2009 WL 674152 (N.D.N.Y.))

FN32. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any**

Order of judgment that will be entered. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

N.D.N.Y.,2009.
Wheeler v. Pataki
Slip Copy, 2009 WL 674152 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2009 WL 1069165 (S.D.N.Y.)
(Cite as: 2009 WL 1069165 (S.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Adrella E. WILSON, Plaintiff,
v.
LIMITED BRANDS, INC., et al., Defendants.
**No. 08 CV 3431(LAP).**

April 17, 2009.

West KeySummary
**Administrative Law and Procedure 15A**  501

15A Administrative Law and Procedure
    15AIV Powers and Proceedings of Administrative
Agencies, Officers and Agents
        15AIV(D) Hearings and Adjudications
            15Ak501 k. Res Judicata. Most Cited Cases

**Civil Rights 78**  1711

78 Civil Rights
    78V State and Local Remedies
        78k1705 State or Local Administrative Agencies
and Proceedings
            78k1711 k. Hearing, Determination, and Relief;
Costs and Fees. Most Cited Cases

**Civil Rights 78**  1712

78 Civil Rights
    78V State and Local Remedies
        78k1705 State or Local Administrative Agencies
and Proceedings
            78k1712 k. Judicial Review and Enforcement of
Administrative Decisions. Most Cited Cases

**Constitutional Law 92**  4178

92 Constitutional Law
    92XXVII Due Process
        92XXVII(G) Particular Issues and Applications
            92XXVII(G)7 Labor, Employment, and Public
Officials
                92k4176 Regulation of Employment
                92k4178 k. Employment Discrimination
Laws. Most Cited Cases
An Article 78 proceeding that affirmed the New York
State Division of Human Rights' (SDHR) determination
that there was no probable cause that an employer engaged
in unlawful discriminatory practices provided a former
employee with a full and fair opportunity to litigate her
claims, which she asserted in the instant federal action as
well. Thus, SDHR's determination of no probable cause
was entitled to preclusive effect because the SDHR's
procedure for investigating complaints, coupled with
judicial review, comported with due process. That the
employee might have been unaware of an administrative
appeal process was of no import. The employee's failure
to avail herself of the full range of available procedures
did not render those procedures inadequate under the Due
Process Clause. U.S.C.A. Const.Amend. 14; McKinney's
CPLR 7801 et seq.

*MEMORANDUM AND ORDER*

LORETTA A. PRESKA, District Judge.

*1 Defendants Victoria Secret Stores, L.L.C. and Limited
Brands, Inc. ("VSS" or "Defendants") move pursuant to
Rule 12(c) for judgment on the pleadings, arguing that
collateral estoppel precludes Plaintiff Adrella E. Wilson
from re-litigating claims she has already litigated in the
State Division of Human Rights ("SDHR") and through an
Article 78 proceeding in Bronx County. For the reasons
set out below, the motion is granted.

The Supreme Court has held that a federal court "must
give to a state-court judgment the same preclusive effect
as would be given that judgment under the law of the State

Not Reported in F.Supp.2d, 2009 WL 1069165 (S.D.N.Y.)
(Cite as: 2009 WL 1069165 (S.D.N.Y.))

in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In adherence to this rule, the Court of Appeals has previously held that a "New York state court affirmation of the [SDHR's] finding of no probable cause would preclude federal litigation based on the same facts." *Yan Yam Koo v. Dep't of Bldgs. of the City of New York,* 218 Fed. Appx. 97, 98 (2007) (Summary Order), affirming *Yan Yam Koo v. NYC Dep't of Bldgs.,* No. 04 Civ. 9628, 2006 WL 963883 (S.D.N.Y. Apr. 12, 2006) (Summary Order). Therefore, a "judgment pursuant to Article 78 may preclude relitigation of issues already decided in that earlier judgment." *LaFleur v. Whitman,* 300 F.3d 256, 272 (2d Cir.2002).

New York law applies collateral estoppel "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." *LaFleur,* 300 F.3d at 271. In *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Supreme Court held that an Article 78 proceeding that affirmed the SDHR's determination of no probable cause was entitled to preclusive effect because the SDHR's procedure for investigating complaints, coupled with judicial review, comported with due process. 456 U.S. at 483-485. *See Hill v. Coca Cola Bottling Co. of New York,* 786 F.2d 550, 552 (2d Cir.1986) ("Since [plaintiff's] administrative proceeding before the state labor department was judicially confirmed in the Article 78 proceeding, we are required by *Kremer* to apply New York's law on collateral estoppel.").

Here, Plaintiff filed a Verified Complaint with the SDHR on April 25, 2005. [FN1] Following the SDHR finding of no probable cause on October 10, 2007 (Ex. I to the Amended Complaint ("Am.Compl.")), Plaintiff commenced an Article 78 proceeding seeking "to overturn [the] decision of the [SDHR] as well as investigate ministerial acts which delayed this case for 31 months." (Verified Petition, attached to the Article 78 Decision.) As noted in the Article 78 Decision, a hearing was held in that proceeding on May 19, 2008 at which both parties presented evidence.

FN1. The entire administrative record from the

SDHR is attached to the June 27, 2008 Decision in *Wilson v. Victoria's Secret, et al* Supreme Court of the State of New York, County of Bronx, Index No. 34095707 (the "Article 78 Decision") which, in turn, is attached as Exhibit A to Defendants' moving papers. The Court may consider these papers and the documents attached to the Amended Complaint herein on this motion. *See Stewart v. Transp. Workers Union of Greater New York, Local 100,* 561 F.Supp.2d 429, 435-36 (S.D.N.Y.2008) (noting that a district court may rely on matters of public record of which the court may take judicial notice in resolving a Rule 12(c) motion); *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006) (district court may rely on documents incorporated in a complaint on a Rule 12(c) motion).

On June 27, 2008, the State Court determined that "based upon the hearing held on May 19, 2008 and review of the file of the New York State Division of Human Rights the court finds that the determination of respondent of October 10, 2007 was not arbitrary or capricious." Accordingly, the State Court dismissed Plaintiff's Article 78 petition.

*2 The Amended Complaint was filed in this Court on July 25, 2008, and this motion followed.

*Same Issues Raised*

Plaintiff claims national origin discrimination in both the SDHR and in her Amended Complaint in this Court. Plaintiff admits that the claims raised in both fora were claims of national origin discrimination raised under Title VII:

Plaintiff "agrees that she filed a Verified Complaint against Victorias Secret [sic] ('VSS') with the New York State Division of Human Rights ('SDHR') ... and agrees that the charge was based on National Origin." *See* Pl. Opposition at 10.[FN2] The charge filed with the SDHR alleged a violation of both state law and Title VII. *See* Pl. Opposition, at 15; Amended Complaint, Exh. I. The

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1069165 (S.D.N.Y.)
(Cite as: 2009 WL 1069165 (S.D.N.Y.))

SDHR determined that there was "no probable cause to believe that [VSS] has engaged in or is engaging in the unlawful discriminatory practice complained of." *See* Am. Compl., Exh. I.

> FN2. Reference is to Plaintiff's Affirmation in Opposition to Motion dated February 11, 2009.

Plaintiff "agrees that on December 5, 2007 an Article 78 [proceeding] was filed in the Bronx County New York State Supreme Court ... to overturn the decision of the SDHR." *See* Pl. Opposition at 15. That Court held that "the SDHR actions/determination was not arbitrary and capricious and dismissed the Article 78 petition." *Id.* at 17.

Finally, Plaintiff "agrees that an amended complaint was filed on July 25, 2008 in this [federal] court based on national origin discrimination in violation of Title VII." *Id.* at 19.

More specifically, a comparison of Plaintiff's pleadings in the Article 78 proceeding and in this action confirms that the two claims are based on precisely the same facts and circumstances. For example, in both fora, Plaintiff complains of:

Harassment by management by their cutting her hours and putting false write ups in her personnel files, *compare* letter of 1/3/06 to SDHR (attached to Article 78 Decision) *with* Am. Compl., ¶ 2E, p. 3, l. 9, p. 5, ll. 1-4.

Unfair or "un-American" working conditions, *compare* letter of 3/5/07 to SDHR (attached to Article 78 Decision) with Am. Compl., ¶ 2E, p. 2 l. 8.

Transfer of sales to favored associates, *compare* letter of 3/5/07 to SDHR (attached to Article 78 Decision) *with* Am. Compl., ¶ 2E, p. 3, l. 16.

Management's failure to inform her of late night cab reimbursement policy, *compare* letter of 3/5/07 to SDHR

(attached to Article 78 Decision) *with* Am. Compl., ¶ 2E, p.4, ll. 8-10.

Management's refusal to grant her time off to attend a funeral, *compare* letter of 3/5/07 to SDHR (attached to Article 78 Decision) *with* Am. Compl., ¶ 2E, p. 6, ll. 1-2.

Retaliation for reporting sexual harassment, *compare* letter of 3/5/07 to SDHR (attached to Article 78 Decision) *with* Am. Compl., ¶ 2E, p. 6, ll. 6-7, ll. 15-16.

Management's insulting remarks, *compare* letter received 10/4/06 to SDHR (attached to Article 78 Decision) *with* Am. Compl ., ¶ 2E, p. 3, l. 9.

**\*3** Retaliation of the April 13, 2005 incident which led to her termination, *compare* letter received 10/4/06 to SDHR (attached to Article 78 Decision) *with* Am. Compl., ¶ 2E, p. 8, l. 1.

The issues raised in the SDHR proceeding were, of course, necessarily decided by the State Court in the Article 78 Decision.

*Full Opportunity to Litigate Had*

A "full and fair opportunity to litigate" means that "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer,* 456 U.S. at 481. As noted above, the Supreme Court has clearly stated that an Article 78 proceeding that affirms the SDHR's determination of no probable cause is entitled to preclusive effect because the SDHR's procedure for investigating complaints, coupled with judicial review, comport with due process. *Id.* at 483-485. Thus, the Article 78 proceeding here provided Plaintiff with a full and fair opportunity to litigate her claims. That she might have been unaware of the administrative appeal process, *see* Pl. Op. at 5-6, is of no import. Plaintiff's failure to avail herself of the full range of available procedures does not render those procedures inadequate under the Due Process Clause. *Kremer,* 456 U.S. at 485. ("The fact that Mr. Kremer

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1069165 (S.D.N.Y.)
(Cite as: 2009 WL 1069165 (S.D.N.Y.))

failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy.")

*Plaintiff's Other Arguments Against Collateral Estoppel Without Merit*

To the extent that Plaintiff suggests that her naming VSS in her SDHR proceeding and Limited Brands in this action somehow avoids the application of collateral estoppel, she is mistaken. Identity of defendants is not required. *See, e.g.,* LaFleur, 300 F.3d at 274 (holding that the proper inquiry with respect to collateral estoppel is *"not* whether the respondent-defendants were identical in both cases"); Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 555, n. 1 (2d Cir.1967) (explaining that "collateral estoppel may bar relitigation of an issue even against different defendants," provided that the issue in contention was necessary to the result reached in the prior proceeding); Yan Yam Koo, 218 Fed. Appx. at 99 (holding that the fact "[t]hat the plaintiff did not name the identical parties in the state and federal actions does not disturb our finding of [issue] preclusiveness").

In any event, the party defendants are sufficiently closely related to permit preclusion. Victoria's Secret Stores, L.L.C.-Plaintiff's actual employer (*see* Am. Compl. at ¶ 11E)-is a wholly-owned subsidiary of Limited Brands Store Operations, Inc., a Delaware corporation that is a wholly-owned subsidiary of Intimate Brands, Inc. Intimate Brands, Inc. is a Delaware corporation that is a wholly-owned subsidiary of LBI, which is also a publicly traded Delaware corporation.[FN3]

> **FN3.** The Court may take judicial notice of this fact, as this information is attached to the LBI Form 10K that is filed with the Securities and Exchange Commission. Accordingly, it is a matter of public record. *See* Stewart, 561 F.Supp.2d at 435-36.

Finally, to the extent that Plaintiff argues that she did not raise all her federal causes of action in her Article 78 proceeding, she is nevertheless barred from raising them now pursuant to the doctrine of *res judicata.*[FN4] Under New York law, the doctrine of *res judicata* bars a "later

claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994). Because Plaintiff's claims indisputably arise from the same set of facts, *res judicata* applies to bar any legal theories she now raises that are different from those raised in the state court proceeding. *See Kremer,* 456 at 465 n. 3, 481 n. 22 (noting that *res judicata* has been taken to bar claims arising from the same transaction even if brought under different statutes; also noting that a ' 'party cannot escape the requirements of full faith and credit and res judicata by asserting its own failure to raise matters clearly within the scope of a prior proceeding' " (quoting Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 710, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982))).

> **FN4.** Although Plaintiff named VSS as the defendant in the state court case and LBI in this case, the identity of the parties is nonetheless the same for purposes of determining *res judicata.* LBI has a sufficiently close relationship to VSS and both defendants were known to Plaintiff at the time she filed her first lawsuit. *See, e.g.,* Official Publ'ns, Inc. v. Kable News Co., 811 F.Supp. 143, 147 (S.D.N.Y.1993) (holding that the "doctrine of *res judicata* also bars litigation of the same causes of action against defendants who were known to plaintiff at the time the first action was filed but were not named where the newly-added defendants have a sufficiently close relationship to the original defendant"); Alpert's Newspaper Delivery Inc. v. The New York Times Co., 876 F.2d 266, 270 (2d Cir.1989) (noting that in determining privity for *res judicata* purposes, the issue is one of substance rather than the names of the caption of the case). Because LBI is merely a holding company of which VSS is a wholly-owned subsidiary, and the defenses raised by VSS sufficiently represented LBI's interests, VSS and LBI are in privity for *res judicata* purposes. *See* G & T Terminal Packaging Co. v. Consol. Rail Corp., 719 F.Supp. 153, 159 (S.D.N.Y.1989) (holding that "[s]ubsidiaries are in privity with their principal for res judicata purposes when, as here, they sufficiently represent the principal's interests"). Additionally, the same counsel who represented

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1069165 (S.D.N.Y.)
(Cite as: 2009 WL 1069165 (S.D.N.Y.))

>VSS in the prior state court litigation represents
>LBI and VSS in the current litigation. *See
>Melwani v. Jain,* No. 02 Civ. 1224, 2004 WL
>1900356, *2 (S.D.N.Y. Aug. 24, 2004) (stating
>that "the fact that the parties in the prior and
>current litigation had the same attorney is of
>singular significance in the privity analysis"
>(quotation marks omitted)).

*Conclusion*

**\*4** For the reasons set out above, Defendants' motion for
judgment on the pleadings [dkt. no. 14] is granted.

The Clerk of the Court shall mark this action closed and
all pending motions denied as moot.

SO ORDERED.

S.D.N.Y.,2009.
Wilson v. Limited Brands, Inc.
Not Reported in F.Supp.2d, 2009 WL 1069165
(S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 2223910 (S.D.N.Y.)
(Cite as: 2009 WL 2223910 (S.D.N.Y.))

**H**   Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Robert Edward GAYLE, Plaintiff,
v.
Officer C. BENWARE, Officer S. Carlson, and Officer
D. Williams, Defendants.
**No. 08 Civ. 8017(RBM)(FM).**

July 27, 2009.

***DECISION & ORDER***

RICHARD M. BERMAN, District Judge.

**I. Background**

*1 On or about September 17, 2008, Robert Edward Gayle ("Plaintiff" or "Gayle") filed a *pro se* complaint ("Complaint") pursuant to 42 U.S.C. § 1983 against Officer C. Benware, Officer S. Carlson, and Officer D. Williams (collectively, "Defendants"), alleging, among other things, that while he was incarcerated at Green Haven Correctional Facility ("Green Haven"), Defendants injured him by "punching and kicking" him while Defendants were restraining and transporting him "to [the] hospital ." (*See* Compl., dated July 3, 2008, at 3.) In his Complaint, Plaintiff alleges that he did not "file a grievance" regarding this incident. (*Id.* at 4.)

On December 29, 2008, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6), arguing, among other things, that Plaintiff "did not complete the grievance process before filing this action" and therefore failed "to exhaust his administrative remedies" as mandated by the Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). (Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl., dated Dec. 29, 2008 ("Def.'s Mem."), at 1, 3 .)

On February 18, 2009, in opposition to Defendants' motion, Plaintiff submitted an affidavit, sworn to on January 23, 2009, alleging, among other things, that he "requested a grievance form and a grievance representative, which [he] was denied" and that he "wrote [his] grievance on a regular piece of paper and gave it to an officer to mail it out for [him]" but he "never received [any] response [because] most likely that officer never mailed it out." (Aff. of Robert Edward Gayle, sworn to on Jan. 23, 2009 ("Gayle Aff."), at 1.)

On July 6, 2009, United States Magistrate Judge Frank Maas, to whom the matter had been referred, issued a thorough report and recommendation ("Report"), recommending that Defendants' motion be denied because, among other reasons, when "taking Gayle's pleadings as a whole and construing them liberally, Gayle has made a prima facie showing that he reasonably attempted to obtain a grievance form, access a representative, and mail a grievance through prison officials." (Report at 9.)

Although the Report advised that, pursuant to 28 U.S.C. § 636(b) (1) and Fed.R.Civ.P. 6(a), 6(d), and 72, "the parties shall have ten days from the service of this [Report] to file written objections," (Report at 9), to date, neither party has filed objections. (*See* Ltr. from John Knudsen to Hon. Richard M. Berman, dated July 23, 2009 ("Defendants will not file objections to the Report").)

**For the reasons stated below, the Report is adopted in its entirety.**

**II. Standard of Review**

The Court may adopt those portions of a report and recommendation to which no objections have been made and which are not clearly erroneous. *See Thomas v. Arn,* 474 U.S. 140, 149 (1985). The Court may "accept, reject, or modify, in whole or in part, the findings or

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2223910 (S.D.N.Y.)
(Cite as: 2009 WL 2223910 (S.D.N.Y.))

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed.R.Civ.P. 72(b); *Grassia v.. Scully,* 892 F.2d 16, 19 (2d Cir.1989).

**\*2** Where, as here, a petitioner is proceeding *pro se,* the Court construes the petitioner's claims liberally, *see* Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir.1999), and will "interpret them to raise the strongest arguments that they suggest," Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994).

**III. Analysis**

The facts and procedural history set forth in the Report are incorporated herein by reference. Having conducted a review of the Report (and applicable legal authorities), the Court finds that the Report is not clearly erroneous and, in fact, is in conformity with the law. *See* Pizarro v. Bartlett, 776 F.Supp. 815, 817 (S.D.N.Y.1991).

Judge Maas properly concluded that Defendants' motion should be denied because, among other reasons, Plaintiff claims that he "reasonably attempted to [file] a grievance" but "the actions of the Green Haven staff prevented him from doing so" when they allegedly denied his requests for "a grievance form and access to a grievance representative" and allegedly failed "to mail [Plaintiff's informal] grievance." (Report at 7, 9 (citing Gayle Aff.)); *see* Hemphill v. New York, 380 F.3d 680, 688 (2d Cir.2004); *see also* Lahoz v. Orange County, No. 08 Civ. 3589, 2009 WL 666950, at \*5 (S.D.N.Y. Mar. 12, 2009) ("Because [plaintiff] was denied recourse to the grievance procedures, his failure to exhaust procedural remedies must be excused."); Taylor v. Zerillo, No. 08 Civ. 1484, 2008 WL 4862690, at \*2 (E.D.N.Y. Nov. 10, 2008) (denying motion to dismiss for failure to exhaust administrative remedies because, among other reasons, plaintiff alleged that he "was not given any grievance forms" and that he "complained to the warden in writing but received no response").

**IV. Conclusion and Order**

For the reasons set forth herein and therein, the Court

adopts Judge Maas's Report in its entirety and denies Defendants' motion to dismiss [# 7].

*REPORT AND RECOMMENDATION TO THE HONORABLE RICHARD M. BERMAN*

FRANK MAAS, United States Magistrate Judge.

In this prisoner civil rights action brought under 42 U.S.C. § 1983, *pro se* plaintiff Robert Gayle ("Gayle") alleges that certain corrections officers ("Defendants") at the Green Haven Correctional Facility ("Green Haven") injured him by using excessive force while restraining and transporting him. (*See* Docket No. 2) (Complaint). The Defendants have filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Gayle did not complete the requisite administrative grievance process before commencing this action. For the reasons set forth below, the Defendants' motion (Docket No. 7) should be denied.

*I. Background*

Gayle's complaint arises out of an incident that allegedly occurred at Green Haven on June 24, 2008. (Complaint ¶ II(C)). According to Gayle, during a facility frisk Defendant Officer Benware accused Gayle of throwing a slipper at him, then ordered Gayle to lie on the bed with his hands behind his back, grabbed his arms, handcuffed him from behind, and proceeded to punch and kick him. (*Id.* ¶ II(D)). Officer Benware allegedly subsequently turned Gayle over to Defendant Officers Carlson and Williams, who escorted Gayle to an outside hospital, beating him all the while. (*Id.*). Gayle contends that he suffered numerous injuries as a result of the incident, including a "transfusion for heart failure," chest abrasions, numbness in his wrist and leg, and bruising. (*Id.* ¶ III). Upon his release from the hospital, Gayle was placed in the Special Housing Unit ("SHU") at Green Haven, where he remained for twenty-eight days. (Docket No. 12) (Aff. of Robert E. Gayle, sworn to on Jan. 23, 2009 ("Gayle Aff.")).

**\*3** In his complaint, Gayle conceded that he had not filed

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2223910 (S.D.N.Y.)
(Cite as: 2009 WL 2223910 (S.D.N.Y.))

a grievance about the incident with Green Haven or any other correctional facility. (*See* Complaint ¶ IV(D)). Additionally, although the *pro se* prisoner complaint form provided spaces for Gayle to explain his failure to file a grievance, Gayle did not offer a reason or indicate that he had spoken with prison officials about his claim. (*Id.* ¶ IV(F)). Indeed, Gayle stated that he did not know whether Green Haven has a grievance procedure, or whether any grievance procedure would cover his claims. (*Id.* ¶¶ IV(B), (C)).

On December 11, 2008, I held a telephone conference with the parties during which Gayle indicated that he failed to file a formal grievance because of his physical condition and because "no one would answer to [him] filing a grievance [when he was] put into [the] SHU after coming from the hospital." (*See* Tr. of Tel. Conf. dated Dec. 11, 2008, at 3-5). After opposing counsel indicated that the Defendants intended to move to dismiss Gayle's case based upon his failure to exhaust his remedies, I cautioned Gayle that he should, at minimum, submit an affidavit explaining why he did not or could not grieve. (*Id.* at 10).

On December 18, 2008, even before the defense motion was filed, Gayle submitted a "Notice of Motion" form to my Chambers in an apparent attempt to explain the circumstances surrounding his failure to grieve. Gayle stated that he "couldn't possi[ ]bly file a grievance under the security of the correctional facility." (*See* Notice of Mot., dated Dec. 18, 2008 ("Notice of Mot.")). He added that, "[i]n the complaint[,] it were checked off [']not file, ['] because of security[.] It is a criminal matter of the defendants involve [d]." (*Id.*). He thus again conceded that he had not filed a grievance.

On December 29, 2008, the Defendants filed their motion to dismiss. (Docket No. 7). Thereafter, on January 8, 2009, Your Honor referred the motion to me for a Report and Recommendation. (Docket No. 9).

In opposition to the Defendants' motion, Gayle has now submitted an affidavit in which states that while he was in the SHU, he "requested a grievance form and a grievance representative, which [he] was denied and never seen." (Docket No. 12) (Gayle Aff.). Gayle further alleges that he

"wrote [his] grievance on a regular piece of paper and gave it to an officer to mail it out for [him], to which [he] never received no response, most likely that officer never mailed it out." (*Id.*). Gayle's affidavit does not indicate the name of the officer to whom he allegedly gave his grievance.

## II. *Applicable Law*

### A. *Motion to Dismiss*

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996). As the Supreme Court recently has explained, the issue that must be decided under Rule 12(b)(6) is whether the plaintiff's claims are "plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). This requires the Court to apply a "flexible" standard, pursuant to which a pleader must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis omitted).

**\*4** When a party proceeds *pro se,* the Court is obligated to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Sloane v. Mazzuca,* No. 04 Civ. 8266(KMK), 2006 WL 3096031, at \*3 (S.D.N.Y. Oct. 31, 2006) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)) (brackets and ellipsis in original); *see also Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir.1998) ("Though a court need not act as an advocate for *pro se* litigants, in *pro se* cases there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done.") (internal quotation marks and citation omitted). This principle applies with particular force when, as in this case, a *pro se* plaintiff alleges civil rights violations. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2223910 (S.D.N.Y.)
(Cite as: 2009 WL 2223910 (S.D.N.Y.))

Moreover, because Gayle is a *pro se* litigant, the Court may appropriately consider his "additional materials, such as his opposition memorandum" in assessing the legal sufficiency of his claims. *See Crum v. Dodrill,* 562 F.Supp.2d 366, 374 n. 13 (N.D.N.Y.2008) (quoting *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at *1 n. 2 (S.D.N.Y. Nov. 17, 1997)).

B. *Prisoner Litigation Reform Act*

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner must exhaust any available administrative remedies before he may challenge prison conditions in federal court. This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). When a prisoner seeking damages plausibly seeks to counter a defendant's claim that he has failed to exhaust available remedies, the court must ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Singh v. Goord,* 520 F.Supp.2d 487, 495-96 (S.D.N.Y.2007) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)); *see also Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004) (failure to exhaust under the PLRA is an affirmative defense subject to estoppel).

The New York State correctional system, of which Green Haven is a unit, has implemented an Inmate Grievance Program ("IGP") which permits an inmate to file complaints with the facility's Inmate Grievance Resolution Committee ("IGRC"). *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.1(c). The inmate can appeal an adverse IGRC decision to the facility superintendent, and from there to a committee of central office staff. *Id.* A complaint must be submitted to the IGP clerk within twenty-one calendar days of the incident on an "inmate grievance complaint form," or on plain paper if the form is not readily available. *Id.* § 701.5(a)(1). The IGP requires that a supply of inmate grievance complaint forms be "maintained in all

special housing areas and ... be given to inmates requesting them." *Id.* § 701.7(a)(1). In addition, an "IGRC staff member ... or grievance supervisor shall make rounds of all special housing areas ... at least once a week to allow inmates direct access to the program." *Id.* § 707.7(c) (1).

III. *Discussion*

**\*5** It is clear that Gayle did not file a formal grievance about the June 24 incident despite the existence of an administrative remedy. Moreover, the Defendants are understandably put out that Gayle has alleged for the first time at the eleventh hour that he attempted to file a grievance. (*See* Reply at 3). Reading Gayle's papers collectively, however, and viewing his allegations in the light most favorable to him, Gayle clearly avers that he *attempted* to file a grievance pursuant to the IGP, but that the actions of the Green Haven staff prevented him from doing so. *See Hemphill,* 380 F.3d at 686. Specifically, in his affidavit, Gayle states that while he was in the SHU, he requested a grievance form and access to a grievance representative. (Gayle Aff.). Although both are to be provided to inmates in the SHU, *see* N.Y. Comp.Codes R. & Regs. tit. 7, §§ 707.7(a)(1), (c)(1), Gayle indicates that these requests were denied, (Gayle Aff.). Gayle also states that he instead wrote his grievance on a piece of paper and gave it to an officer to mail. (*Id.*). The IGP permits this method of grieving to be employed when official complaint forms are not available. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(a)(1). According to Gayle, he never received a response to this grievance and was concerned that the officer did not actually mail the grievance. (Gayle Aff.).

In these circumstances, Gayle's complaint cannot be dismissed for failure to exhaust administrative remedies. Admittedly, Gayle does not identify which Green Haven staff members he asked for a complaint form or representative, or the officer to whom he allegedly gave his grievance for mailing. He seems to suggest, however, that the Defendants may have impeded his access to the grievance process. (See Notice of Mot.). If any of the Defendants did, in fact, prevent Gayle from grieving pursuant to the IGP's requirements, their exhaustion defense might be forfeited. *See Hemphill,* 380 F.3d at 690 (petitioner's allegations of threats may estop defendants from asserting exhaustion defense); *Ziemba,* 366 F.3d at

Slip Copy, 2009 WL 2223910 (S.D.N.Y.)
(Cite as: 2009 WL 2223910 (S.D.N.Y.))

162-63 (exhaustion defense may be estopped where defendants allegedly beat and threatened petitioner, and denied grievance forms and writing implements); *Sereika v. Patel,* 411 F.Supp.2d 397, 403 (S.D.N.Y.2006) ("Where a plaintiff alleges that the defendant made misrepresentations that inhibited the plaintiff from participating in the grievance process, dismissal of the complaint for failure to exhaust is not appropriate."); *DeMartino v. Zenk,* No. 04 Civ. 3880(SLT)(LB), 2006 WL 1455456, at *5 (E.D.N.Y. May 25, 2006) (declining to hold that plaintiff failed to exhaust when defendants may have prevented plaintiff "from submitting timely grievance forms by misplacing or losing his documents, or denying him access to a photocopier").

Moreover, even if the Defendants themselves were not directly involved, interference by *any* Green Haven staff members would have rendered the IGP constructively unavailable to Gayle. "Where a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the [prisoner], and thus the [PLRA] does not preclude the prisoner from suing in federal court." *Thomas v. New York State Dep't of Corr. Servs.,* No. 00 Civ. 7163(NRB), 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002); *see also Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) ("a remedy that prison officials prevent a prisoner from utilizing is not an available remedy" under the PLRA) (cited with approval by *Abney v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004)).

**\*6** Here, taking Gayle's pleadings as a whole and construing them liberally, Gayle has made a prima facie showing that he reasonably attempted to obtain a grievance form, access a representative, and mail a grievance through prison officials. While these assertions may ultimately not prove credible, at this preliminary stage the Court cannot say, as a matter of law, that they are implausible. Accordingly, although there is ample reason to question the veracity of Gayle's latest representations, I reluctantly conclude that the Defendants' motion must be denied.

IV. *Conclusion*

For the foregoing reasons, the Defendants' motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6) for lack of administrative exhaustion, (Docket No. 7), should be denied.

V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard B. Berman and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Berman. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

S.D.N.Y.,2009.
Gayle v. Benware
Slip Copy, 2009 WL 2223910 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Michael L. DECKER, Plaintiff,
v.
Michael F. HOGAN, Commissioner, NYS Office of
Mental Health; Donald Sawyer, Executive Director,
Central New York Psychiatric Center, Defendants.
**No. 9:09-CV-0239 (TJM/GJD).**

Sept. 28, 2009.

Michael L. Decker, pro se.

Office of the Attorney General, Charles J. Quackenbush, Esq., Assistant Attorney General, of Counsel, State of New York, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. Introduction**

**\*1** Plaintiff Michael L. Decker commenced this action *pro se* seeking relief pursuant to 42 U.S.C. § 1983 for the alleged violation of his constitutional rights. Dkt. No. 1. Plaintiff is a civil detainee under Article 10 of the New York Mental Health Law, and has been confined at the Central New York Psychiatric Center ("CNYPC") since August, 2008. Plaintiff challenges the constitutionality of three aspects of the Sexual Offender Treatment Program ("SOTP") administered by the New York State Office of Mental Health ("OMH") at CNYPC. Plaintiff claims that the SOTP utilizes treatment programs which are faith-based, and that the requirement that he participate in those programs violates his rights under the First

Amendment. *Id.* at 2-3. Plaintiff also claims that SOTP-required polygraph and penile plethysmography ("PPG") FN1 examinations are unconstitutional. *Id.* at 3-4. According to plaintiff, successful completion of the SOTP is a condition of his release from CNYPC. *Id.* at 3-4. Named as defendants are Michael Hogan, Commissioner of OMH, and Donald Sawyer, Executive Director of CNYPC. Plaintiff seeks monetary damages as well as declaratory and injunctive relief. FN2

> FN1. Penile Plethysmography, as defined by the OMH in the Advancement to SOTP Phase II-IV Consent to Participate in Treatment, is intended to "assess sexual interests and measure treatment effectiveness. In this treatment, while wearing a sterilized gauge around the penis, a machine records any erection response that results from listening to and/or viewing depiction of sexual and non-sexual materials. This assessment occurs within a laboratory setting with complete privacy." Dkt. No. 3-3 at 8. For recent discussions of the wide range of opinion regarding the efficacy of PPG examinations and their proper role in sex offender treatment programs, see *United States v. Rhodes,* 552 F.3d 624, 626-29 (7th Cir.2009) (finding that challenge to PPG as condition of supervised release not ripe where condition would become effective only after defendant served more than ten years imprisonment and several other conditions were met); *United States v. Weber,* 451 F.3d 552, 561-66 (9th Cir.2006) (requirement of PPG testing as part of sex offender treatment program imposed as a condition of supervised release requires heightened procedural protections).

> FN2. Two other CNYPC detainees have filed § 1983 actions in the Northern District challenging these same aspects of the SOTP. See *Pratt v. Hogan,* No. 6:08-CV-1003, 2009 WL 1916284 (N.D.N.Y. Jul. 6, 2009) (Hurd, J.) (injunctive/declaratory relief claims dismissed pursuant to *Younger* abstention; defendants granted qualified immunity from claims for money damages); *McChesney v. Hogan,* No.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

9:08-CV-1186, Report-Recommendation that motion for injunctive relief be denied, 2009 WL 607398 (N.D.N.Y. Dec. 23, 2008) (Peebles, M.J.), adopted, 2009 WL 607398, at *7 (N.D.N.Y. Mar. 9, 2009) (Mordue, C. J.). McChesney also claims that the SOTP requirement that he compile an autobiography is unconstitutional. McChesney, 2009 WL 607398, at *1.

In addition to his complaint, plaintiff filed a motion seeking a temporary restraining order and preliminary injunction enjoining defendants from mandating participation in faith-based programs and from requiring polygraph or PPG examinations as a part of the SOTP. Dkt. No. 3-2 at 1-2.

By Order of this Court filed March 26, 2009, plaintiff was granted leave to proceed *in forma pauperis* and the U.S. Marshal was directed to effect service of process on the defendants. Dkt. No. 5. Plaintiff's request for the issuance of a temporary restraining order was denied. Defendants were directed to file a response to the preliminary injunction motion. *Id.* at 2-3.

Defendants have responded in opposition to plaintiff's motion for injunctive relief. Dkt. No. 8. Defendants also filed a "cross-motion" seeking dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[FN3]

> FN3. Plaintiff has not filed a response to defendants' motion to dismiss.

These motions are before the Court for consideration.[FN4]

> FN4. The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of this motion. Any appeal taken from this Memorandum-Decision and Order, if appropriate, will be to the Court of Appeals for the Second Circuit.

## II. Motion to Dismiss Standard

In deciding a Rule 12(b)(6) dismissal motion, "the court must accept the material facts alleged in the complaint as true, and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836 (1994).[FN5] The plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007) (italics in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).

> FN5. The "complaint" includes any written instrument attached to it as an exhibit and any statements or documents incorporated into the complaint by reference. Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 674 (2d Cir.1995); Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

*2 The burden undertaken by the moving party is substantial, as the question presented by the motion to dismiss is not whether the non-moving party is likely ultimately to prevail, "but whether the claimant is entitled to offer evidence to support the claims." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995) (other citations omitted). In order to withstand a motion to dismiss, a complaint must plead enough facts to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ("The court should freely give leave when justice so requires.").

## III. First Amendment Claims

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

Plaintiff identifies himself as an atheist.[FN6] Since his placement at CNYPC, plaintiff has been assigned to the SOTP. Participation in the SOTP has "subjected [plaintiff] to religious practices and rituals." Dkt. No. 1 at 2. The "Good Lives Model and Boundaries Programs" teach the participants that they must "believe in something denoted as spirituality." *Id.* at 3. In addition, the SOTP includes Dialectic Behavior Therapy, which teaches "the rituals and practices" of Buddhism. *Id.* The SOTP also utilizes several "Hazeldon products which incorporate Christian beliefs and practices." *Id.* These programs include "From the Inside Out," "Growing Up Male," "Problem Solving" and "Anger Management." [FN7]

> **FN6.** The following facts are drawn from plaintiff's complaint and are accepted as true for purposes of the pending motion to dismiss. *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Boykin v. KeyCorp,* 521 F.3d 202, 204 (2d Cir.2008).

> **FN7.** In his memorandum in support of the motion for injunctive relief, plaintiff states that the Hazeldon products are "Christian based and incorporate the 12 steps/12 traditions of A.A. (Alcoholics Anonymous)." Dkt. No. 3 at 3.

The First Amendment, made applicable to states by the Fourteenth Amendment, states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. The First Amendment embraces two fundamental concepts: "freedom to believe and freedom to act" on one's beliefs. *Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940). The First Amendment's Establishment Clause prohibits government from officially preferring one religious denomination over another. Thus, "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente,* 456 U.S. 228, 244 (1982); *Skoros v. City of New York,* 437 F.3d 1, 16 (2d Cir.2006). The First Amendment also protects individuals against "government compulsion either to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion." *Mozert v. Hawkins County Bd. of Educ.,* 827 F.2d 1058, 1066 (2d Cir.1987), *cert. denied,* 484 U.S. 1066 (1988).

Defendants urge dismissal of plaintiff's First Amendment claims, arguing that he has failed to state a cognizable claim under either the Establishment Clause or the Free Exercise Clause. Dkt. No. 8-2 at 7-9. Defendants contend that the state law pursuant to which plaintiff is confined "was clearly enacted for secular purposes" and that the purposes of the SOTP are "clearly secular as well." *Id.* at 7-8. With respect to the particular treatment programs complained of by plaintiff, defendants maintain that dismissal is warranted because there is "no proof" that the programs "either advance or inhibit religion;" there is "no evidence" that the programs "foster any entanglement with religion;" and "no proof" of "governmental compulsion impacting upon his atheistic beliefs or practices." *Id.* at 8-9.

**\*3** The question presented by defendants' motion to dismiss is not whether plaintiff has or can adduce facts sufficient to prove his First Amendment claims. It may become clear, at summary judgment or at some later stage in the litigation, that plaintiff's claims are not adequately supported. But at this early stage, the Court must accept plaintiff's allegations as true and may not dismiss the case unless it is clear that it would be impossible for plaintiff to make out a legally cognizable claim.

Reading plaintiff's complaint liberally and accepting the well-pleaded allegations thereof as true, the Court finds that the First Amendment claim is sufficient to withstand defendants' motion to dismiss. Atheism is subject to the protections of the First Amendment. *Wallace v. Jaffree,* 472 U.S. 38, 52-53 (1985) ("the Court has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all."); *McChesney,* 2009 WL 607398, at *6 (Peebles, M.J.); *Alexander v. Schenck,* 118 F.Supp.2d 298, 300-02 (N.D.N.Y.2000) (Kahn, J.). Plaintiff identifies himself as an atheist, and alleges that he "has been subjected to religious practices and rituals" in the course of participating in the SOTP. Dkt. No. 1 at 2. Plaintiff claims that portions of the program are based upon Zen Buddhism and Christianity and that the SOTP "teach[es] that you have to believe in something denoted as spirituality." *Id.* at 2-3. Plaintiff alleges that he is compelled to participate in these faith-based programs in order to secure his release from

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

CNYPC, and that this compelled participation violates his "right to believe or not as my conscience dictates." *Id.* at 3, 5. *See, e.g., Warner v. Orange County Dept. of Probation,* 115 F.3d 1068, 1075 (2d Cir.1997) (holding that because the plaintiff was sent to Alcoholics Anonymous as a condition of his probation, without offering a choice of other providers, he was "plainly" coerced in violation of the Establishment Clause); *Alexander,* 118 F.Supp.2d at 301 (prisoner ordered to attend Alcohol and Substance Abuse Treatment Program was "coerced" for purposes of First Amendment).

Defendants' motion to dismiss plaintiff's First Amendment claim is denied. Accordingly, the Court will address plaintiff's motion for preliminary injunctive relief.

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. As the Second Circuit noted in *Covino v. Patrissi,* 967 F.2d 73 (2d Cir.1992), the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id.* at 77 (affirming district court's denial of inmate's request for preliminary injunction). Where a movant seeks relief which will alter, rather than maintain, the status quo, or which will provide him with substantially all the relief sought, the requested injunction is properly characterized as mandatory rather than prohibitory. A party seeking a mandatory injunction must make a "clear" or "substantial" showing of the likelihood of success, as well as irreparable harm should the injunction not be granted. *Jolly v. Coughlin,* 76 F.3d 468, 473-74 (2d Cir.1996).

**\*4** Plaintiff asks that this Court issue a preliminary injunction prohibiting defendants from mandating participation in faith-based SOTP programs. Dkt. No. 3-2. The Court treats plaintiff's motion as seeking mandatory rather than prohibitory relief. Accordingly, plaintiff must make a clear or substantial showing of the likelihood of success on the merits of his claims.

Where a deprivation of constitutional rights is alleged, specific proof of irreparable injury is not required. *See e.g., Mitchell v.. Cuomo,* 748, F.2d 804, 806 (2d

Cir.1984). For purposes of this motion, defendants do not contest plaintiff's assertion that he will suffer irreparable harm if the requested relief is not granted. *See* Dkt. No. 8-2 at 6. *See McChesney v. Hogan,* No. 9:08-CV-1186, Report-Recommendation, 2009 WL 607398, at *3 (N.D.N.Y. Dec. 23, 2008), *adopted,* 2009 WL 607398, at *7 (N.D.N.Y. Mar. 9, 2009) (Mordue, C.J.).

A party seeking injunctive relief must also demonstrate a likelihood of succeeding on the merits of a claim, or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief. *Covino,* 967 F.2d at 77.

While the Court has found that plaintiff's allegations are sufficient to withstand defendants' Rule 12(b)(6) motion to dismiss, the present record does not contain evidence sufficient to warrant the issuance of injunctive relief. The record before the Court consists only of plaintiff's description of these programs and his claim that defendants are "proselytizing Christianity" and mandating his participation in faith-based programs in contravention of his avowed atheism. Plaintiff has not presented the Court with program materials or other evidence demonstrating a clear or substantial likelihood of success on the merits of his claim that SOTP programs such as Dialectic Behavior Therapy, "The Good Lives Model" and various Hazeldon programs are, in fact, religious in nature in First Amendment terms. *Compare Warner,* 115 F.3d at 1075 (finding a "Twelve Steps" program which "placed a heavy emphasis on spirituality and prayer" and instructed belief in "a Power greater than ourselves" was an intensely religious event) with *Boyd v. Coughlin,* 914 F.Supp. 828, 833 (N.D.N.Y.1996) (McAvoy, J.) ("This court is unaware of a controlling decision that equates spirituality with religion, such that any reference to spirituality in ... [a] treatment program ... runs afoul of the First Amendment."). See *McChesney,* 2009 WL 607398, at *4. Plaintiff has also failed to support his motion with evidence that he was coerced into participating in the alleged religious exercises or rituals by virtue of his enrollment in the SOTP, and that no secular alternatives were made available to patients raising religious objections to the content of the treatment programs. *See Warner,* 115 F.3d at 1075 (recognizing that consideration of plaintiff's First Amendment claim "would be altogether different" if he had been offered a reasonable choice of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

therapy providers).

**\*5** Accordingly, plaintiff's motion for preliminary injunctive relief is denied.

## IV. Fifth Amendment Claims

SOTP participants seeking to advance to Phase II-IV of the program are asked to consent to polygraph and PPG examinations. Dkt. No. 1 at 3.[FN8] The Advancement Contract signed by plaintiff in December, 2008 contains the following general disclaimer: "[t]he court, your attorney, the Attorney General's Office, and other relevant participants in your commitment process have access to the information you reveal regarding your sexual offending behaviors and may use that information during the civil management process." Dkt. No. 3-3 at 7.[FN9] The section of the Advancement Contract specifically describing the required polygraph examinations includes the following statement: "The courts may choose to use any information gathered from these examinations." *Id.* at 8.[FN10] The Advancement Contract advises SOTP participants that a refusal to undergo the requested examinations "may slow or prevent advancement in SOTP phases of treatment." *Id.*

FN8. See note 5 *infra.*

FN9. Plaintiff references these documents as exhibits (C) and (D) to the complaint. Although the complaint as filed does not include these exhibits, the materials (as well as the documents identified as exhibits A and B), were filed as exhibits in support of plaintiff's motion for injunctive relief. Both submissions were filed on the same day.

FN10. A previous version of the Advancement Contract advised that polygraph examinations "are not designed to be incriminating or to be used in court." See Dkt. No. 3-3 at 5.

The Fifth Amendment's privilege against self-incrimination, which applies to the states via the Fourteenth Amendment, provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege

> not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."

*Minnesota v. Murphy,* 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973)). The right not to answer potentially incriminating questions however, is not absolute. Rather, "[t]he prohibition against compelling the testimony of a witness in any setting is predicated upon there being a real danger that the testimony might be used against the witness in later criminal proceedings." *Andover Data Services, a Div. of Players Computer, Inc. v. Statistical Tabulating Corp.* 876 F.2d 1080, 1082 (2d Cir.1989). Thus, "[i]t is ... black-letter law that a witness cannot assert a Fifth Amendment privilege not to testify 'if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness.' " *Pillsbury Co. v. Conboy,* 459 U.S. 248, 273 (1983) (Blackmun, J., concurring) (quoting *Brown v. Walker,* 161 U.S. 591, 597 (1896)).

Outside of the prison context, the Supreme Court has "described compulsion in relatively broad terms." *Ainsworth v. Risley,* 244 F.3d 209, 213 (1st Cir.2001), *vacated on other grounds,* 536 U.S. 953 (2002). The Court has held that "certain types of penalties are capable of coercing incriminating testimony," including: termination of employment, the loss of a professional license, ineligibility to receive government contracts, and the loss of the right to participate in political associations and to hold public office. *McKune v. Lile,* 536 U.S. 24, 49-50 (2002) (O'Connor, J., concurring in the judgment) (citing cases). The Supreme Court has defined "compulsion" as anything that makes the exercise of the right "costly." *Spevack v. Klein,* 385 U.S. 511, 515 (1967). See *Lefkowitz v. Cunningham,* 431 U.S. 801, 808 (1977) (rejecting "the notion that citizens may be forced to incriminate themselves because it serves a governmental need.").

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

**\*6** Writing for a plurality of the Court in *McKune,* Justice Kennedy concluded that the setting in which the compulsion arises is an integral part of the constitutional analysis. *Id., 536 U.S. at 36* ("The fact that these consequences are imposed on prisoners, rather than ordinary citizens, moreover, is important in weighing respondent's constitutional claim."). Noting that "[a] broad range of choices that might infringe constitutional rights in free society fall within the expected conditions of confinement of those who have suffered a lawful conviction," *id.,* Justice Kennedy concluded that the "atypical and significant hardship" analysis articulated in *Sandin v. Connor, 515 U.S. 472 (1995)* "provides a reasonable means of assessing whether the response of prison administrators to correctional and rehabilitative necessities are so out of the ordinary that one could sensibly say they rise to the level of unconstitutional compulsion." *McKune,* 536 U.S. at 41. Concurring with the judgment reached by the *McKune* plurality, that withholding certain privileges upon an inmate's refusal to participate in a mandatory sex offender treatment program does not constitute a compulsion that encumbers the constitutional right not to incriminate oneself, Justice O'Connor wrote separately to express her opinion that the Fifth Amendment compulsion standard is broader than *Sandin's* "atypical and significant hardship" standard. *Id.,* 536 U.S. at 48 (O'Connor, J., concurring).[FN11]

[FN11.] The inmate plaintiff in *McKune,* complained that he faced transfer to a less-desirable maximum security prison, and that he also faced the loss of his personal television set, less access to prison organizations and the gym area, a reduction in certain pay opportunities and restricted visitation rights. *McKune, 536 U.S. at 39.* Justice Kennedy, writing for a plurality, emphasized that the decision not to participate in the Kansas Sexual Abuse Treatment Program "did not extend [the prisoner's] term of incarceration" nor did it "affect his eligibility for good-time credits or parole." *Id., 536 U.S. at 38.*

In this case, plaintiff, a civil detainee faced with prolonged civil detention if he refuses to submit to polygraph and PPG examinations, has adequately alleged that he faces "compulsion" that is constitutionally significant even under the *Sandin* analysis utilized by the *McKune* plurality.

Notwithstanding the foregoing, however, the Court finds that plaintiff has failed to state a Fifth Amendment claim because neither polygraph nor PPG examinations violate the Fifth Amendment privilege against self-incrimination. The Second Circuit has held that requiring the use of a polygraph examination for a convicted sex offender as a condition of supervised release does not violate the privilege against self-incrimination because polygraph evidence is generally inadmissible, and the individual would be free to challenge that evidence should it be used against him in a future proceeding. *United States v. Johnson, 446 F.3d 272, 278-80 (2d Cir.2006); United States v. Santiago,* No. 03 Cr. 664, 2008 WL 1959548, at *1 (S.D.N.Y. May 5, 2008); *see also United States v. Dotson,* 324 F.3d 256, 261 (4th Cir.2003) (polygraph test, "inadmissible in nearly every circumstance at trial," may be required as a condition of supervised release); *United States v. Zinn,* 321 F.3d 1084, 1090-92 (11th Cir.2003) (requiring polygraph testing as a condition of supervised release generally does not violate the Fifth Amendment). *Compare United States v. Weber,* 451 F.3d 552, 568 n. 17 (9th Cir.2006) (defendant subject to polygraph testing as requirement of supervised release retains Fifth Amendment rights "unless granted use-and-derivative-use immunity").

**\*7** The Court also find that results of PPG examinations do not implicate plaintiff's Fifth Amendment right against self-incrimination because the procedure itself is not testimonial but, rather, is an assessment of an individual's physical reactions to various stimuli. *See McChesney,* 2009 WL 607398, at *5; *Walrath v. United States,* 830 F.Supp. 444, 446 (N.D.Ill.1993). Moreover, courts asked to consider the admissibility of PPG examinations have uniformly refused to do so, finding that PPG results fail to meet scientific validity prong for admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589-90 (1990)). *See Doe ex. rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1266 (9th Cir.2000) ("courts are uniform in their assertion that the results of penile plethysmographs are inadmissible as evidence because there are no accepted standards for this test in the scientific community."); *United States v. Powers,* 59 F.3d 1460, 1470-71 n. 13 (4th Cir.1995) (appellant "has not

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

provided, and we have not found, any decisions acknowledging the validity of the use of penile plethysmography other than in the treatment and monitoring of sex offenders.").

Based upon the foregoing, the Court finds that the allegations of the complaint, as drafted, do not state a claim upon which relief may be granted for the violation of plaintiff's Fifth Amendment right against self-incrimination stemming from polygraph and/or PPG examinations conducted as part of the SOTP. This aspect of defendants' motion to dismiss is granted.[FN12]

> FN12. In light of this ruling, the Court need not address plaintiff's motion for injunctive relief. Defendants' claim that they are entitled to qualified immunity from damages on this claim is also moot.

**V. Qualified Immunity**

Defendants raise the affirmative defense of qualified immunity. Dkt. No. 8-2 at 11-12. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Stephenson v. Doe,* 332 F.3d 68, 76 (2d Cir.2003) (quoting *McCardle v. Haddad,* 131 F.3d 43, 50 (2d Cir.1997)).

The Second Circuit has recognized that the availability of qualified immunity may "turn[ ] on factual questions that cannot be resolved at [the motion to dismiss] stage of the proceedings." *Taylor v. Vermont Dept. of Educ.,* 313 F.3d 768, 793 (2d Cir.2002).[FN13] Thus, where the "objective reasonableness" of defendants' actions depends at least in part on what information they had regarding the substance of plaintiff's complaints, an adjudication as to the applicability of the qualified immunity affirmative defense on the basis of the pleadings alone would be premature.

> FN13. In *Stephenson,* the court advised that a "defendant should press a qualified immunity

defense during pretrial proceedings so that such a claim can be disposed of by summary judgment where possible, or factual disputes material to the defense can be identified and presented to the jury." *Stephenson,* 332 F.3d at 76.

Although a factual basis for affording qualified immunity to defendants on plaintiff's First Amendment claims may arise during the course of discovery, the Court cannot at this early stage of the proceeding, accepting all of plaintiff's allegations as true, conclude that defendants are entitled to qualified immunity as a matter of law. *See Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 255 (2d Cir.2001); *Bailey v. Pataki,* 08 Civ. 8563, 2009 WL 2001178, at *6 (S.D.N.Y. Jul. 10.2009). Accordingly, defendants' motion to dismiss plaintiff's First Amendment claims for money damages based on qualified immunity is denied, without prejudice to renew.

**VI. Conclusion**

**\*8** Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted is granted in part and denied in part. The well-pleaded allegations of the complaint sufficiently allege a violation of plaintiff's First Amendment rights resulting from his required participation in faith-based treatment programs. Plaintiff's motion for preliminary injunctive relief is denied. Defendants' request for dismissal of plaintiff's First Amendment claims for money damages on qualified immunity grounds is denied, without prejudice. Plaintiff's Fifth Amendment claims are dismissed, without prejudice.

WHEREFORE, on the basis of the above, it is hereby

ORDERED, that defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **granted in part and denied in part** as set forth above, and it is further

ORDERED, that plaintiff's motion for preliminary injunctive relief is **denied,** and it is further

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

ORDERED, that defendants file an answer to complaint **no later than October 31, 2009,** and it is further

ORDERED, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

IT IS SO ORDERED.

N.D.N.Y.,2009.
Decker v. Hogan
Slip Copy, 2009 WL 3165830 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 724648 (S.D.N.Y.)
(Cite as: 2007 WL 724648 (S.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Reginald PETTY, Plaintiff,
v.
Glenn GOORD, et al., Defendants.
**No. 00 CIV 803 JSR.**

March 5, 2007.

*ORDER*

RAKOFF, J.

**\*1** On February 6, 2007, the Honorable Frank Maas, United States Magistrate Judge, issued a Report and Recommendation in the above-captioned matter recommending that defendants' motion to dismiss be denied.

Defendants have failed to file any objection to the Report and Recommendation, and, for that reason alone, have waived any right to review by this Court. *See Thomas v. Arn,* 474 U.S. 140, 147-48 (1985); *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002); *Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 174 (2d Cir.2000). Accordingly, the Court hereby adopts the Report and Recommendation, and, for the reasons therein, denies defendants' motion to dismiss plaintiff's complaint.

SO ORDERED.

*REPORT AND RECOMMENDATION TO THE
HONORABLE JED S. RAKOFF*

MAAS, Magistrate J.

I. *Introduction*

In this action brought pursuant to 42 U.S.C. Section 1983, *pro se* plaintiff Reginald Petty ("Petty")'s sole remaining claim is that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by disclosing his HIV-positive status to non-medical personnel, which, in turn, led to harassment of him while he was incarcerated at the Green Haven Correctional Facility ("Green Haven").[FN1] Following a remand from the United States Court of Appeals for the Second Circuit, the defendants have filed a renewed motion to dismiss Petty's complaint, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that he failed to exhaust his administrative remedies. Although the procedural path is somewhat convoluted, the proper disposition of this motion seems clear. As set forth below, the relief requested should be denied because there are issues of fact as to whether Petty's acknowledged failure to exhaust his remedies should be excused.

> FN1. Petty is no longer lodged at Green Haven. *See* http://nysdocslookup.docs.state.ny.us/GCA00P00/WINQ3/WINQ130 (last visited Feb. 6, 2007). He concedes that the harassment ceased once he was transferred from Green Haven to another state correctional facility. (*See* Pl.'s Aff. in Opp., dated Aug. 12, 2001 ("Pl.'s Opp. I"), ¶ 21).

II. *Relevant Procedural History*

Petty's undated complaint was received by the Pro Se Office of this Court on September 7, 1999, and thereafter was filed on February 4, 2000. (*See* Docket No. 2). Rather than answering the complaint, the defendants filed a motion to dismiss which Judge Mukasey granted on several grounds, including Petty's failure to exhaust his administrative remedies. *See Petty v. Goord,* No. 00 Civ. 803(MBM), 2002 WL 31458240 (S.D.N.Y. Nov. 4,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 724648 (S.D.N.Y.)
(Cite as: 2007 WL 724648 (S.D.N.Y.))

2002). Petty then filed a timely notice of appeal on November 22, 2002. (Docket No. 31).

On January 20, 2005, in a summary order, the Court of Appeals dismissed most of Petty's claims on appeal, but vacated the judgment with respect to Petty's Eighth Amendment claim. The court further directed that the district court determine on remand: (a) "whether [Petty's] transfer to another facility rendered [his] administrative remedies unavailable"; (b) "if [Petty's] administrative remedies were available, whether the [defendants] were estopped from asserting failure to exhaust as a defense"; and (c) "if [Petty's] administrative remedies were available and one or all of the [defendants] were not estopped from asserting failure to exhaust as a defense, whether [Petty] was justified in not pursuing a grievance in accordance with the procedures set forth by the New York Department of Correctional Services" ("DOCS"). (*See* Docket No. 34) (*citing* Hemphill v. New York, 380 F.3d 680 (2d Cir.2004); Giano v. Goord, 380 F.3d 670 (2d Cir.2004)).

**\*2** On May 31, 2006, the defendants filed their "second motion to dismiss," arguing that Petty has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). (Docket Nos. 37-40). On July 31, 2006, Petty submitted opposition papers in which he set forth the facts relevant to his acknowledged failure to exhaust his administrative remedies. (Docket No. 44).[FN2] On August 15, 2006, the defendants filed their reply memorandum of law. (Docket No. 43). Accordingly, the second motion to dismiss is fully submitted.

> FN2. Petty's opposition papers do not contain any discussion of the applicable law. During a telephone conference on May 16, 2006, however, Judge Mukasey, to whom this case then was assigned, advised Petty that to oppose the defendants' motion he need only provide the facts that he believed showed why he was entitled to proceed despite the PLRA exhaustion requirement. (*See* Docket No. 41 (May 16, 2006 Tr. at 4)).

In October 2006, this case was reassigned to Your Honor following Judge Mukasey's retirement. (Docket No. 45).

Shortly thereafter, the case was referred to me for general pretrial purposes. (*See* Docket No. 44).

III. *Relevant Facts*

The relevant facts, viewed in the light most favorable to Petty, establish as follows:

A. *DOCS Inmate Grievance Program*

The DOCS administrative grievance procedure for inmates is known as the "Inmate Grievance Program" ("IGP"). *See* N.Y. Comp.Codes R. Regs. ("NYCRR"), tit. 7, ch. VIII, pt. 701. An IGP grievance potentially involves as many as three steps. *See id.* Although the applicable procedures have changed slightly over time, in 1996, an inmate first had to file a grievance within fourteen calendar days of an alleged occurrence. *Id.* § 701.7(a)(1) (repealed Mar. 30, 2004). Representatives of an Inmate Grievance Resolution Committee ("IGRC") then were afforded seven working days in which to review the grievance and resolve it informally, or, if there was no resolution, to conduct a full IGRC hearing and take action. *Id.* § 701.7(a)(3), (4). Thereafter, within four working days of his receipt of the IGRC's written response to the grievance, the inmate could appeal an adverse decision to the superintendent of the facility. *Id.* § 701.7(b)(1). The superintendent, in turn, was required to render a decision within ten working days of receipt of the inmate's appeal. *Id.* § 701.7(b)(5). At the last stage, an inmate could appeal an adverse decision by the superintendent to the DOCS Central Office Review Committee ("CORC") within four working days after it was issued. *Id.* § 701.7(c)(1). The IGP further provided that absent the grievant's written consent, the time limits for a decision at each stage could not be extended, and that matters not decided within the time limits could then be appealed to the next step. *Id* . § 701.8.

B. *Petty's Inmate Grievance*

On September 19, 1996, Petty filed an inmate grievance at Green Haven, in which he alleged that the Green Haven medical staff had improperly disclosed his confidential medical information to security and other non-medical

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 724648 (S.D.N.Y.)
(Cite as: 2007 WL 724648 (S.D.N.Y.))

staff. (Decl. of Josh Krom, dated May 23, 2006 ("Krom Decl."), Ex. A at 4).[FN3] The following month, Petty was confined in the Special Housing Unit ("SHU") at Green Haven. (*See* Pl.'s Opp. I ¶ 19; Pl.'s Reply Mot. to Defs.' Mot. to Dismiss ("Pl.'s Opp. II") at 7). While he was in the SHU, Petty became severely depressed because correctional officers were harassing him and calling him names due to his HIV-positive status. (Pl.'s Opp. I ¶ 20). As a result, Petty tried to commit suicide several times.[FN4] Petty consequently was committed to the custody of the Central New York Psychiatric Center ("CNYPC") from October 22 until at least December 31, 1996. (*See* Pl.'s Opp. I ¶¶ 20-22; Pl.'s Opp. II at 7). Prior to this transfer, Petty also was held in Green Haven's psychiatric unit from October 18 to 22, 1996. (Pl.'s Opp. II at 9).

> FN3. The following day, Petty also wrote to the medical director at Green Haven to complain about these disclosures. (*See* Compl. ¶ 7).

> FN4. In a footnote, the defendants suggest that Petty's complaint "alleges in conclusory fashion, and without any support, that defendants' harassment and discrimination caused him physical injury ." (Defs.' Mem. at 4 n. 2). Construing Petty's complaint liberally, however, the Court cannot exclude the possibility that the means he used to attempt suicide resulted in some physical injury to him.

**\*3** On October 22, 1996, the date of Petty's transfer to the CNYPC, Sergeant A. Miller, an IGRC investigator, made an entry on an IGRC Investigation Flow Sheet which stated that Petty was "unavailable for further investigation due to transfer to CNYPC." (Krom Decl. Ex. A at 5). That same day, the IGRC concluded its investigation of Petty's grievance, recommending somewhat cryptically: "U.A.G.R.A.[FN5] To the extent that no medical information desclosed [sic] to non-medical, or medical related personel [sic] with patients [sic] consent." (*Id.* at 3, 6). Although Petty did not sign to acknowledge his receipt of this decision, the Green Haven grievance clerk forwarded an appeal to the superintendent on Petty's behalf on October 24, 1996. (*Id.*).

> FN5. No explanation of this acronym has been

provided by the parties.

On October 28, 1996, Superintendent Artuz denied Petty's appeal on the ground that he had "not provided sufficient information to investigate his allegations." (*Id.* at 2). The superintendent further "noted that security staff will be present during medical examinations when it is determined necessary by the security supervisor." (*Id.*). There is no evidence that Petty ever received a copy of this decision prior to filing this suit.

Following his release from the CNYPC, Petty was returned to Green Haven. (Pl.'s Opp. I ¶ 22). Upon his return, correctional officers continued to harass Petty because of his HIV-positive status until January 10, 1997, when he again was committed to the CNYPC. (*Id.*). On January 28, 1997, Petty was re-released from the CNYPC and transferred to the Wende Correctional Facility. (*Id.* ¶ 23; Pl.'s Opp. II at 9). Petty did not appeal the superintendent's denial of his grievance to CORC while he was at the CNYPC, after his return to Green Haven, or once he was sent to Wende. (*See* Decl. of Thomas Eagen, dated May 19, 2006 ("Eagen Decl."), Ex. A) (printout of Petty's appeals to CORC). Petty contends that he could not file a timely appeal because he was outside DOCS jurisdiction when it was due. (Pl.'s Opp. II at 9).

IV. *Discussion*

A. *Petty's Rule 12(b)(1) Motion Must Be Treated as a Summary Judgment Motion*

The defendants have moved to dismiss Petty's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure solely on the ground that he failed to exhaust his administrative remedies in accordance with the requirements of the PLRA, 42 U.S.C. § 1997e(a). Rule 12(b)(1) permits a defendant to seek the dismissal of a claim when the federal courts lack subject matter jurisdiction over it. Fed.R.Civ.P. 12(b)(1). In deciding such a motion, a district court may refer to evidence outside the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000). Accordingly, in this case, the defendants have submitted the declarations of Josh Krom, the Inmate Grievance Program Supervisor at Green

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 724648 (S.D.N.Y.)
(Cite as: 2007 WL 724648 (S.D.N.Y.))

Haven, and Thomas Eagen, the Director of the DOCS Inmate Grievance Program, in support of their motion to dismiss. (*See* Docket Nos. 38, 39). Attached to both declarations are relevant DOCS documents. (*Id.*).

**\*4** Although evidence outside the pleadings may be considered in connection with a motion under Rule 12(b)(1), the PLRA exhaustion requirement is not jurisdictional. *Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003). Rather, want of exhaustion is simply an affirmative defense which may or may not be asserted by a defendant. *See Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004) (citing *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999)). For this reason, Rule 12(b)(1) is not an appropriate means to seek the dismissal of Petty's Eighth Amendment claim based upon his failure to exhaust. *See Rivera v. Goord,* No. 03 Civ. 830, 2004 WL 2151089, at *8 (W.D.N.Y. Sept. 22, 2004); *McCoy v. Goord,* 255 F.Supp.2d 233, 249 (S.D.N.Y.2003).

The inapplicability of Rule 12(b)(1) does not necessarily sound the death knell for the defendants' motion since it may be "converted" into another more suitable motion. For example, in *McCoy,* the defendants moved to dismiss a prisoner's claims pursuant to Rules 12(b)(1) and (b)(6) on the ground that the prisoner had failed to exhaust his grievance as required by the PLRA. After concluding that Rule 12(b)(1) was not the proper vehicle, the court converted the defendants' Rule 12(b)(6) motion into a motion for summary judgment "limited to the narrow issue of exhaustion." *McCoy,* 255 F.Supp.2d at 249, 251, 255-57. The court reasoned that this was proper because the plaintiff had been given both notice and an opportunity to submit evidence relating to the issue of exhaustion. *Id.* at 255. Similarly, in *Rivera v. Pataki,* No. 01 Civ. 5179(MBM), 2003 WL 21511939, at *5 (S.D.N.Y. July 1, 2003), a motion to dismiss a prisoner's complaint on exhaustion grounds pursuant to Rules 12(b)(1) and (b)(6) was converted into a summary judgment motion so that the court could determine whether the prisoner had exhausted his administrative remedies. As in *McCoy,* the court reasoned that the conversion of the motion was proper because the plaintiff had been given both notice and an opportunity to respond before the court reached its decision. *Id.*

Perhaps the closest case to this one is *Hernandez v.*

*Coffey,* No. 99 Civ. 11615(WHP), 2006 WL 2109465 (S.D.N.Y. July 26, 2006). There, the prisoner's complaint was initially dismissed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the ground that he had failed to exhaust his administrative remedies. The Second Circuit vacated the judgment, however, and directed the district court to reexamine the exhaustion issue in light of its decisions in *Giano* and *Hemphill. Id.* at *1. On remand, after the defendants again moved to dismiss under Rule 12(c), Judge Pauley converted their motion into a summary judgment motion. *Id.* at *2. The judge held that conversion was warranted, even without prior notice to the parties, because both sides had submitted materials outside the pleadings for the court's consideration and therefore could not claim to have been surprised by the conversion of the motion. *Id.*

**\*5** In this case, the defendants have based their motion exclusively on Rule 12(b)(1), which-unlike Rules 12(b)(6) and 12(c)-does not expressly allow for the conversion of a motion to dismiss into a motion for summary judgment. *See* Fed.R.Civ.P. 12(b), (c). Nonetheless, many courts have concluded that the outcome should be the same. *See, e.g., Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.,* 428 F.3d 1285, 1292 (10th Cir.2005) ("[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." (quoting *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995))); *Bryce v. Episcopal Church in the Diocese of Colorado,* 289 F.3d 648, 654 (10th Cir.2002) ("The crucial element is the substance of the motion, not whether it is labeled a Rule 12(b)(1) motion rather than 12(b)(6)."); *Avedis v. Herman,* 25 F.Supp.2d 256, 262-63 (S.D.N.Y.1998) (recognizing an exception to the general rule against converting a Rule 12(b)(1) motion into a summary judgment motion when the jurisdictional claim and the merits are intertwined); *Fraternal Order of Police, Nat'l Labor Council, USPS No. 2 v. U.S. Postal Serv.,* 988 F.Supp. 701, 704 n. 2 (S.D.N.Y.1997) (finding no prejudice from the conversion of a Rule 12(b)(1) motion into one under Rule 12(b)(6) because the plaintiffs had fully briefed whether the defendants stated a claim); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 n. 9 (3d ed. 2004) ("Defendants often move to dismiss for lack of subject matter jurisdiction when they are actually challenging the legitimacy of plaintiff's claim for relief. When outside

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 724648 (S.D.N.Y.)
(Cite as: 2007 WL 724648 (S.D.N.Y.))

evidence is presented to support a Rule 12(b)(1) motion of this type, the court will bring the conversion provision into operation."); *see also* Laura A. Kastner *et al., 2 Moore's Federal Practice* § 12 .34[4][a] (3d ed. 2000) ("Although labeling a motion incorrectly will not affect a movant's right to relief, dismissing it under the wrong provision will, because Rule 12(b)(6) dismisses a claim on its merits, whereas Rule 12(b)(1) does not.").

In this case, the defendants clearly have mischaracterized Petty's failure to exhaust his remedies as a jurisdictional defense. However, both Petty and the defendants have submitted materials outside of the pleadings to the Court in connection with the Rule 12(b)(1) motion. Indeed, Judge Mukasey expressly allowed Petty to oppose the motion solely on the basis of such facts. In such circumstances, the parties can claim neither surprise nor prejudice by the conversion of the defendants' Rule 12(b)(1) motion into a motion for summary judgment pursuant to Rule 56 with respect to the issue of exhaustion.

B. *Standard of Review*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when:

**\*6** the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and ... draw all permissible inferences in favor of that party." *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997). The Court also must accept as true the non-moving party's evidence, if supported by affidavits or other evidentiary material. *See Kulak v. City of New York,* 88 F.3d 63, 70 (2d Cir.1996). Assessments of credibility, choosing between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court. *Fischl,* 128 F.3d at 55. Thus, "[t]he court's

function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried." *Id.*

Although the same summary judgment rules apply to a party proceeding *pro se,* special latitude is appropriate to ensure that a meritorious claim is not foreclosed simply because the papers submitted in opposition to the motion are inartfully worded. *See Morris v. Citibank, N.A.,* No. 97 Civ. 2127(JGK), 1998 WL 386175, at *2 (S.D.N.Y. July 8, 1998). By the same token, however, "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Odom v. Keane,* No. 95 Civ. 9941(SS), 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997) (quoting *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1995)).

C. *Exhaustion of Administrative Remedies*

Under the PLRA, an inmate seeking to maintain an action challenging prison conditions must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). The duty to exhaust administrative remedies before filing suit "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2003). This procedural requirement is mandatory. *See Booth v. Churner,* 532 U.S. 731, 739 (2001). Moreover, the Supreme Court recently has held that the PLRA requires "proper" exhaustion; accordingly, before initiating a lawsuit the prisoner must comply "with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo,* 126 S.Ct. 2378, 2386 (2006).

In this Circuit, district courts must engage in a "three-part inquiry" to determine whether an inmate's failure to exhaust his remedies should be excused. *See Hemphill,* 380 F.3d at 686. First, the court must determine whether administrative remedies in fact were available to the prisoner. *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004). Second, if such remedies were available, the court must determine whether the defendants' own actions inhibited the inmate's exhaustion of administrative remedies, thereby requiring that one or more of the defendants be equitably estopped from raising the failure

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 724648 (S.D.N.Y.)
(Cite as: 2007 WL 724648 (S.D.N.Y.))

to exhaust as a defense. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir.2004). Finally, if administrative remedies were available and the defendants are not estopped, the court must determine whether any special circumstances justify the prisoner's failure to comply with administrative procedural requirements. *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir.2004).

1. *Availability of Administrative Remedies*

**\*7** To determine whether an institution's ordinary grievance procedures were available to an inmate, courts apply an objective test, asking "would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill*, 380 F.3d at 688 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003)). Applying that test, judges in this District have found grievance procedures unavailable (or potentially unavailable) when an inmate has been transferred to another jurisdiction or held under unusually restrictive conditions. *See, e.g., Lealock v. City of New York*, No. 01 Civ. 2849(DLC), 2005 WL 323723, at \*5 (S.D.N.Y. Feb. 10, 2005) (concluding that administrative remedies were unavailable because the inmate was transferred from a city-operated prison to a state-operated prison the day after the alleged violation occurred); *Perkins v. Obey*, No. 00 Civ. 1691(LTS)(JCF), 2005 WL 433580, at \*2, \*4 (S.D.N.Y. Feb. 23, 2005) (finding question of fact as to availability of administrative remedies where the inmate alleged that he was unable to submit his appeal while in keeplock); *Hairston v. LaMarche*, No. 05 Civ. 6642(KMW)(AJP), 2006 WL 2309592, at \*8 (S.D.N.Y. Aug. 10, 2006) (issue of fact existed as to whether administrative remedies were available to a prisoner who missed the deadline to file a grievance because he was confined in the SHU).

In this case, the IGRC investigator found that Petty was *"unavailable* for further information due to his transfer to the CNYPC." (*See* Krom Decl. Ex. A) (emphasis added). The IGRC then denied Petty's grievance on October 22, 1996, the same day that Petty was transferred to the CNYPC. (*Id.*). It is unclear whether Petty himself appealed the IGRC's decision or the grievance clerk simply acted on his own. In any event, it is undisputed that the superintendent denied Petty's appeal on October 28, 1996, while Petty was in the custody of the CNYPC. (*See id.*). At that point, under the then-applicable procedures,

Petty had four working days to appeal the superintendent's decision to CORC. *See* NYCCRR § 701.7(c)(1). However, Petty was in the CNYPC until at least December 31, 1996, more than one month after the time in which to submit an appeal to CORC had expired.

There is no indication that Petty ever received notice of the superintendent's decision while he was at the CNYPC or upon his return to Green Haven. The defendants nevertheless argue that, even if Petty never received notice of the superintendent's decision, he should have filed an appeal with CORC once the superintendent's time to resolve his appeal had expired. In their view, Petty "could have appealed his grievance, as well as the superintendent's alleged failure to respond to it, to CORC by filing a Notice of Decision to Appeal (Form # 2133) with the IG[R]C." (Defs.' Reply Mem. at 5). The defendants have made no showing, however, that "Form # 2133" was available to patients at the CNYPC, which apparently is a facility operated by the New York State Office of Mental Health ("OMH"), rather than DOCS. (*See id.* at 5). *See also* http://www.docs.state.ny.us/faclist.html (last visited Feb. 1, 2007) (DOCS webpage listing all DOCS correctional facilities); http://www.omh.state.ny.us/omhweb/facilities/cnpc/facility.htm (last visited Feb. 1, 2007) (OMH website describing the CNYPC). Accordingly, on the present record, there is a genuine issue of fact as to whether Petty's administrative remedies were available to him while he was committed to the custody of the CNYPC. *See Pendergrass v. Sanney*, No. 01 CV 243A, 2004 WL 1946458, at \*2 n. 5 (W.D.N.Y. Aug. 18, 2004) ("Where a prison fails to provide access to grievance forms, a prisoner's complaint cannot be dismissed for failure to exhaust.").

2. *Estoppel*

**\*8** In *Ziemba*, the Second Circuit adopted Fifth Circuit case law holding that prison officials could be equitably estopped from relying on lack of exhaustion as the basis for dismissing a prisoner's complaint. *See Ziemba*, 366 F.3d at 163 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 n. 2 (5th Cir.2001)). Here, however, even if the defendants failed to supply IGP appeal forms to the CNYPC, there is no evidence that they took any affirmative steps to prevent Petty from filing an appeal.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 724648 (S.D.N.Y.)
(Cite as: 2007 WL 724648 (S.D.N.Y.))

Accordingly, Petty cannot rely on the doctrine of equitable estoppel to preclude the defendants from relying on his failure to exhaust his administrative remedies as an affirmative defense. *See Ruggiero v. County of Orange, 467 F.3d 170, 178 (2d Cir.2006)* (inmate may not rely on estoppel in absence of "affirmative act by prison officials that would have prevented him from pursuing administrative remedies").

3. *Special Circumstances*

Even if Petty received notice of the superintendent's decision and the defendants are not estopped from relying on want of exhaustion as an affirmative defense, Petty still would be entitled to proceed with his Eighth Amendment claim if he can demonstrate adequate justification for his failure to appeal the superintendent's decision to CORC. This requires the court to consider "the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Giano,* 380 F.3d at 678.

In this case, Petty was committed to the custody of the CNYPC on October 22, 1996, because of multiple suicide attempts. Thereafter, the superintendent denied Petty's appeal on October 28, 1996, which would have required Petty to submit his appeal to CORC less than two weeks into what eventually became a stay of more than two months at a psychiatric facility. There has been no showing that Petty then had access to the forms necessary for an appeal. There is also no evidence before this Court regarding Petty's mental state at that time. Accordingly, at this preliminary stage the Court cannot rule out the possibility that Petty lacked the practical means or mental capacity necessary to file a timely appeal.

D. *Conclusion*

Because there are issues of fact as to whether Petty's administrative remedies were available to him while he was in the custody of the CNYPC, or whether special circumstances justified his failure to exhaust those remedies, the defendants' motion to dismiss his complaint (Docket No. 37) should be denied.[FN6]

FN6. In light of this recommendation, and in an effort to move this seven-year-old case forward, I have issued a separate Order, bearing today's date, scheduling a telephone conference for February 27, 2007. At that conference, I intend to set a discovery schedule for this case.

V. *Notice of Procedure for Filing Objections to this Report and Recommendation*

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a) and (e). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Rakoff. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b).

S.D.N.Y.,2007.
Petty v. Goord
Not Reported in F.Supp.2d, 2007 WL 724648 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Slip Copy, 2009 WL 3756595 (N.D.N.Y.)
(Cite as: 2009 WL 3756595 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Larry BROWN, Plaintiff,
v.
Dr. Michael F. HOGAN; Dr. Donald Sawyer; and Dr.
Terri Maxymillian, Defendants.
**No. 9:07-CV-842.**

Nov. 6, 2009.

Larry Brown, Marcy, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Justin C. Levin, Esq., Asst. Attorney General, of Counsel, Albany, NY, for State Defendants.

### DECISION and ORDER

DAVID N. HURD, District Judge.

**\*1** Plaintiff, Larry Brown, brought this civil rights action pursuant to 42 U.S.C. § 1983. By Report-Recommendation September 8, 2009, the Honorable Gustave J. DiBianco, United States Magistrate Judge, recommended that defendants' motion for summary judgment (Docket No. 45) be granted, the complaint be dismissed in its entirety; and that plaintiff's cross motion for summary judgment (Docket No. 46) be denied The plaintiff has timely filed objections to the report-recommendation.

Based upon a careful review of the entire file and the recommendations of Magistrate Judge DiBianco, the Report-Recommendation is accepted and adopted in all respects. See 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiff's cross-motion for summary judgment is DENIED;

3. The complaint is DISMISSED in its entirety; and

4. The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

### REPORT-RECOMMENDATION

GUSTAVE J. DiBIANCO, United States Magistrate Judge.

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

Plaintiff is a former inmate of the Department of Correctional Services (DOCS) who is now involuntarily confined at Central New York Psychiatric Center ("CNYPC"). In this civil rights complaint, he alleges that there is no grievance policy or procedure at CNYPC, and he has been denied access to the courts in violation of his constitutional rights. Plaintiff seeks **_only_** injunctive relief. (Complaint ("Compl.") at ¶ 27). (Dkt. No. 1).

Presently before the court is defendants' motion for

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3756595 (N.D.N.Y.)
(Cite as: 2009 WL 3756595 (N.D.N.Y.))

summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 45). Plaintiff has cross-moved for summary judgment. (Dkt. No. 46). For the following reasons, this court recommends that defendants' motion for summary judgment be granted, and the case be dismissed as to all defendants.

## DISCUSSION

### 1. *Summary Judgment*

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the " 'the pleadings, depositions, answers to interrogatories, and admissions on the file, together with any affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord,* 467 F.3d 263, 272-73 (2d Cir.2006) (citing *Celotex Corp.,* 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id.*

**\*2** If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.* A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

### 2. *Facts*

Plaintiff was previously incarcerated at Attica Correctional Facility. (Dkt. No. 2 at 1). On February 23, 2007, the expiration of his fifteen (15) year criminal sentence,[FN1] he was involuntarily committed to CNYPC pursuant to New York Mental Hygiene Law section 9.27 in order to participate in the Sex Offender Treatment Program ("SOTP"). (Compl. at ¶ 8); (Maxymillian Dec'l at ¶¶ 3-5) (Dkt.No.45). Plaintiff claims that when he arrived at CNYPC, several of his personal items were missing. *Id.* at 2. Plaintiff completed a New York State Department of Correctional Services ("NYSDOCS" or "DOCS") Inmate Claim Form on April 3, 2007, and listed eighteen items with an approximate value of $189.95. (Levin Dec'l at Ex. A) (Dkt.No.,45). Plaintiff apparently sent the form to Attica Correctional Facility since the form was stamped "received" by the Attica Correctional Facility Business Office on April 6, 2007. *Id.*

> FN1. Plaintiff states that he was convicted of first degree rape and two counts of first degree sodomy. (Dkt. No. 2 at 1).

On April 5, 2007, plaintiff wrote a letter to defendant Dr. Donald Sawyer, the Executive Director at CNYPC, requesting information about how to file a "Formal Grievance". (Compl. at Ex. B). Plaintiff stated that there were "several continuing incidents which have affected me personally." *Id.* Plaintiff stated that CNYPC employees told plaintiff that there was no policy or procedure for patients to file grievances. *Id.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3756595 (N.D.N.Y.)
(Cite as: 2009 WL 3756595 (N.D.N.Y.))

In a second letter to Dr. Sawyer dated April 9, 2007, plaintiff stated that he had been visited by a CNYPC employee, Mr. Fogg,[FN2] who allegedly told plaintiff that CNYPC did not have a Grievance Policy or Procedure, but Mr. Fogg did have several forms titled "Patient Complaint." (Compl. at Ex. D). However, in his letter, plaintiff stated that Mr. Fogg refused to give plaintiff a Patient Complaint Form. *Id.* Plaintiff then listed several complaints about his housing, and requested that Dr. Sawyer direct Mr. Fogg to provide plaintiff with ten Patient Complaint forms. *Id.* At the end of the April 9 letter, plaintiff characterized the letter as an "appeal of Mr. George Fogg's determination of April 6, 2007," and requested information about "the person or body" from whom he could seek an appeal of this matter, if needed. *Id.*

    FN2. Mr. Fogg is not named as a defendant in this case.

In this complaint, plaintiff claims that when Dr. Donald Sawyer failed to respond to plaintiff's April 9, 2007 letter, he "appealed" by writing a letter, dated April 23, 2007, to defendant Dr. Michael M. Hogan, the Commissioner of the Office of Mental Health ("OMH"). (Compl. at ¶ 12). Plaintiff's April 23, 2007 letter to Dr. Hogan does not mention the specific issues that plaintiff raised in the letter to Dr. Sawyer, but instead argued that Dr. Sawyer was required to assist civilly confined patients in the preparation and filing of "meaningful" legal papers by providing adequate law libraries or adequate assistance from individuals "trained in the law." (Compl. at Ex. E). Plaintiff also asserted that patients who are involuntarily confined "must be afforded the same rights and protections under state and federal law, as those confined in state and federal prisons." *Id.* Plaintiff complained to Dr. Hogan that Dr. Sawyer denied plaintiff the right to legal materials and access to the courts. *Id.*

**\*3** On May 21, 2007, plaintiff wrote to Dr. Terri Maxymillian, Director of plaintiff's SOTP program at CNYPC, regarding the property that was allegedly lost in the transfer from Attica. (Compl. at Ex. C). Plaintiff complained about the absence of a law library and legal services at CNYPC. *Id.* Plaintiff explained that he had been able to "to initiate [FN3] the action," but was "unable to

prepare all the necessary paperwork needed to perfect a claim." *Id.* Plaintiff requested Dr. Maxymillian's assistance to obtain legal resources, pens and pencils, and a typewriter. *Id.*

    FN3. In their Local Rule 7.1(a)(3) statement, defendants state that this language indicates that plaintiff "successfully commenced a claim in the Court of Claims concerning his lost property dispute with DOCS". (Dkt. No. 45, Local Rule 7.1(a)(3) Statement at ¶ 30). Plaintiff denies this, and states that this language only "refers to the claim process at Attica. The material sought is to initiate a claim within the New York Court of Claims ... I was forced settle [sic] my lost property claim because I lacked the necessary materials to proceed to the Court of Claims." (Dkt. No. 48 at ¶ 16).

On May 23, 2007, James Doherty of the Office of Mental Health responded to plaintiff's April 23, 2007 letter on behalf of Dr. Hogan. (Compl. at Ex. A). Mr. Doherty stated that civil hospitals are not required to have a law library accessible to patients *Id* . Mr. Doherty also stated "[u]pon admission, patients are provided with the grievance procedures," and that if plaintiff no longer had his copy of the procedures, he could ask his therapist or team leader for a new copy. *Id.*

Plaintiff makes two claims in this court. Plaintiff's first claim appears to be that CNYPC lacks a grievance procedure, and that plaintiff is still unable to file a grievance, complaining about the "conditions of his confinement." (Compl. at ¶ 20). Plaintiff asserts that he has the right to challenge defendants' decisions, and that this right has been violated. (Compl. at ¶¶ 17-18). Plaintiff's second claim is that defendants failed to provide him with certain office supplies and legal publications and have interfered with plaintiff's access to the New York State courts. Plaintiff argues that although he was able to "initiate a claim," he was unable to prepare the necessary paperwork needed to bring a timely action against DOCS for his property, and was thus, unable to recover for his loss. (Compl. at ¶ 25). Plaintiff argues that the claims are related because defendants' failure to allow plaintiff to grieve their decisions denied plaintiff access to legal materials, allegedly resulting in plaintiff's inability to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3756595 (N.D.N.Y.)
(Cite as: 2009 WL 3756595 (N.D.N.Y.))

access the courts. *See* Compl. at ¶¶ 17, 23.

### 3. *CNYPC Grievance Procedure*

Plaintiff argues that he is confined to a maximum security facility, and that he is entitled to the same "civil rights as those enjoyed by both prisoners of the state of New York and pre-trial detainees, who are confined and subjected to the same conditions." (Dkt. No. 2 at 2-3). Therefore, plaintiff argues that CNYPC should have a grievance policy or procedure which will allow the patients to complain about the conditions of their confinement. (Compl. at ¶ 18).

The Fourteenth Amendment requires the state to assume responsibility for "the safety and well-being" of people in its custody, and that responsibility extends to involuntarily committed psychiatric patients. *Cerbelli v. City of New York,* 600 F.Supp.2d 405, 413 (E.D.N.Y.2008) (citing *Youngberg v. Romeo,* 457 U.S. 307, 315, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)). This requires the State to provide adequate food, clothing, and medical care. *Youngberg,* 457 U.S. at 315. However, the law is well-settled in the prison context that inmates do *not* have a constitutional right to grievance procedures. *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003); *Davis v. Buffardi,* No. 0:01-CV-0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right" (citations omitted). Furthermore, a violation of the inmate grievance procedures does *not* give rise to claim under section 1983. *Cancel v. Goord,* No. 00. CIV.2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713, at *3 (S.D.N.Y. Mar.29, 2001).

**\*4** Thus, even assuming that inmates at CNYPC have the same rights as those confined pursuant to criminal convictions, there is no constitutional right to any grievance procedure, and assuming that a grievance procedure exists, there is no constitutional right, protecting the plaintiff from defendants' violation of that procedure.

In any event, plaintiff is factually incorrect in his claim that CNYPC does not have a policy in place to address

institutional complaints. Defendants have submitted a section of the CNYPC Risk Management Program Policy and Procedure Manual titled "Inpatient Complaints." (Levin Dec'l at Ex. D (Dkt. No. 45). The manual outlines three different ways in which patients are informed of their right to submit complaints: (1) during the orientation process when patients are admitted to the unit; (2) an instructive poster on a bulletin board in each day room; and (3) at "Patient Government Meetings." *Id.* at 2. The manual also states three different ways that patients may submit "Complaints and/or Concerns": (1) by writing a letter to certain individuals listed on the first page of the policy statement; (2) by making a telephone call to any of four different offices; (3) or by "[r]egister[ing] the complaint verbally via staff or visitors." *Id.* The final page of the policy has sections titled "Processing Complaints" and "Appeals". *Id.* at 3.

In his response in opposition to defendants' motion for summary judgment, plaintiff concedes that he received a copy of the relevant section of the CNYPC Risk Management Program Policy and Procedure Manual at the end of July 2007 from the New York State Defenders Association, Inc.<sup>FN4</sup> (Dkt. No. 48 at 4). Plaintiff states that up until that point, he "had not seen these documents and did not know the formal procedure for making a patient complaint at CNYPC." *Id.* Plaintiff reiterates his argument that defendant Sawyer "refused to provide plaintiff with the complaint policy" which would have allowed plaintiff to challenge the conditions of his confinement. *Id.* at 4-5.

FN4. The court also notes that plaintiff was deposed in this action. A copy of the deposition transcript has been included in support of defendants' motion. (Levin Dec'l, Ex. B (Depo.)).

The court notes, however, that whether or not plaintiff *understood* that there was a procedure for making complaints at CNYPC, plaintiff was, nonetheless, able to complain about the conditions of his confinement. Under the existing policy, a complaint may be made by writing a letter to the "Executive Director." (Levin Dec'l Ex. D at 1). In this case, plaintiff wrote two letters to defendant Dr. Sawyer, the Executive Director at CNYPC. (Compl. at Exs. B & D). Plaintiff also wrote letters to defendants Dr. Hogan and Dr. Maxymillian. Plaintiff was following the appropriate grievance procedure, even though he may not

Slip Copy, 2009 WL 3756595 (N.D.N.Y.)
(Cite as: 2009 WL 3756595 (N.D.N.Y.))

have been aware of it.

Plaintiff argues that he was not provided a copy of the "Patient Complaint form" in order to make institutional grievances.[FN5] (Compl. at ¶ 11). The policy does not require the use of the "Patient Complaint form" (Levin Dec'l Ex. D), and plaintiff concedes that no one told him that he was required to use the form. (Depo. at 86). The fact that plaintiff did not receive a response to his letters, or that he did not receive the response that he wanted is irrelevant to whether the policy existed.

> FN5. At his deposition, plaintiff testified that the reason that he wanted to file a grievance when he first requested information about the grievance process, was due to some alleged inappropriate conduct by a CNYPC employee. (Depo. at 48-52).

**\*5** Finally, plaintiff is requesting only injunctive relief. Since it is clear that there is a procedure for making complaints **and** plaintiff concedes that he was ultimately informed of the procedure, plaintiff has received all the relief that he requested. There is no genuine issue of material fact, and defendants' motion for summary judgment on this claim may be granted and the claim dismissed.

**4.** *Access to Courts*

Plaintiff's second claim is that he was denied access to the courts because he was unable to prosecute his claim for lost property against DOCS in the New York Court of Claims. (Compl. at ¶¶ 24-25 & Ex. C). Plaintiff claims that he was unable to prosecute his claim in the Court of Claims because defendants failed to provide plaintiff with, and denied plaintiff's requests for, certain legal publications and resources, and supplies like pens, pencils, and a typewriter. (Compl. at ¶¶ 22-25 & Ex. C). In his response, plaintiff argues that as a result of his inability to litigate the claim, he was forced to accept a "settlement" from the state. (Dkt. No. 48 at ¶ 16).

In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52

L.Ed.2d 72 (1977), the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Inmates do not, however, have a free-standing right to a law library or legal assistance. *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Law libraries and legal assistance programs are "not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Id.* (quoting *Bounds,* 430 U.S. at 825). Law libraries are not required if the inmate has other means of obtaining access to courts.

An inmate alleging a denial of access to courts must show **actual injury** as a result of the deficient access to courts. *Lewis,* 518 U.S. at 351. The **cause** of the injury must be inadequacy of the access. *Id.* Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials. *Warburton v. Underwood,* 2 F.Supp.2d 306, 312 (W.D.N.Y.1998) (quoting *Lewis v. Casey,* 518 U.S. at 353). It has also been held that a plaintiff alleging interference with his access to courts "must have been without the opportunity to overcome the impediment before suffering the actual injury." *Odom v. Baker,* 02-CV-757, 2008 U.S. Dist. LEXIS 7704, \*14-15, 2008 WL 281789 (W.D.N.Y. Jan. 31, 2008) (citing *Howard v. Leonardo,* 845 F.Supp.2d 943, 947 (N.D.N.Y.1994)).

In this case, the court notes that residents of CNYPC have access to Mental Hygiene Legal Services (MHLS). (Maxmillian Dec'l at ¶ 27 & Ex. C). Defendant Maxmillian explains that MHLS is an agency of New York State, independent of CNYPC that provides CNYPC residents with "protective legal services, advice, and assistance, including representation, with regard to the resident's hospitalization." [FN6] (Maxmillian Dec'l at ¶¶ 28-29). Residents are entitled to contact MHLS either in person, by telephone, in writing, by requesting hospital staff to do so, or through family members. *Id.* at ¶ 32 & Ex. C. By affording inmates access to MHLS attorneys, CNYPC is fulfilling any requirement to provide its patients access to the courts, and additional law libraries would not be required.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3756595 (N.D.N.Y.)
(Cite as: 2009 WL 3756595 (N.D.N.Y.))

FN6. While MHLS attorneys may only be available to represent patients on issues relating to the fact and conditions of their confinement in CNYPC, and may not be available to challenge a property claim, the fact that plaintiff's property claim was settled is an alternative basis to dismiss plaintiff's complaint.

*6 In addition, plaintiff states that he wanted to litigate a claim in the New York Court of Claims, and argues that his access to that court was unconstitutionally limited. However, defendants submit a memorandum to plaintiff from the Principal Account Clerk at Attica Correctional Facility dated August 9, 2007. (Levin Dec'l Ex. B). The memorandum offers plaintiff $80.00 as a settlement for two pairs of boots and a padlock. *Id.* The memorandum states that "[i]f you will not accept this amount for your settlement, your next course of action is the court of claims [sic]." *Id.* At his deposition, plaintiff stated that he settled his claim for $80.00. (Depo. at 82).

Plaintiff appears to have settled his property claim with the facility and never even attempted to file an action in the Court of Claims. Plaintiff's conclusory statement that he was "unable" to file an action because of some failure by CNYPC to provide "legal" materials cannot succeed. Plaintiff was compensated for his loss administratively, and no more is required by the Constitution. The defendants could not have known that plaintiff wanted to file an action in the Court of Claims. In any event, the Constitution does not require unlimited access. *Lewis v. Casey,* 518 U.S. at 351. The fact that plaintiff thinks that he could have gotten more money if he filed an action in the Court of Claims cannot form the basis for a constitutional denial of access to courts.

Defendants also argue that plaintiff is able to obtain "on his own accord" any legal resources or books as long as they are not considered contraband. (Dkt. No. 45, *Memo.* at 10). Defendants argue that under CNYPC rules, plaintiff is able to possess up to 15 books in his room, and that CNYPC provides community typewriters, and access to pencils and "flex" and "felt tip" pens. *Id.* Defendants argue that plaintiff's claim is, therefore, moot. *Id.* at 8-11. Plaintiff argues that even if he now has access to these items, defendants have "clearly conced[ed] that plaintiff did not have access as he complained upon [sic] his civil

action complaint." (Dkt. No. 48 at ¶ 11). Defendants clearly do not "concede" this point, and plaintiff forgets that he is asking only for injunctive relief, and thus, the fact that he knows that he now has access to these materials renders his claim moot.

The court finds that there is no genuine issue of material fact to be resolved with respect to this claim, defendants' motion for summary judgment should be granted, and the complaint dismissed in its entirety.

**WHEREFORE** it is hereby

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 45) be **GRANTED,** and the complaint be **DISMISSED IN ITS ENTIRETY;** and it is further

**RECOMMENDED,** that plaintiff's cross-motion for summary judgment (Dkt. No. 46) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2009.
Brown v. Hogan
Slip Copy, 2009 WL 3756595 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.